# WILLIAM H. HILLER

## *vs.*

## STATE OF MARYLAND.

*Sunday laws: Ballimore City; baseball.   Police power.   Statutes: constitutionality; duty of courts.*

Courts will not declare an Act or ordinance unconstitutional, merely because it may seem unwise or inexpedient, nor will they strike it down merely because it operates harshly upon the persons whom it affects.                                        p. 389

An Act of the Legislature can not be declared void upon constitutional grounds, unless it plainly contravenes some provision of the Constitution.                                  p. 389

The Ordinance of 1827 of the Mayor, etc., of Baltimore City, prohibiting the playing of games on Sunday, and retained in force by sub-section 3 of section 906 of the City Charter, is broad and comprehensive enough to prohibit the playing of baseball on that day, even though it be played in a secluded part of a large, natural park, out of the sight of houses or dwellings, without any reward for playing, or charge for admission, but merely as a recreation and in a quiet and peaceful manner, without noise or conduct disturbing the public peace.

p. 389

The passage of such an ordinance is within the proper exercise of the police power that is vested in the State and in Baltimore City.                                              p. 394

Such an ordinance is not obnoxious either to Article 36 of the Declaration of Rights, guaranteeing religious freedom, or to the 14th Amendment of the Constitution of the United States, protecting civil rights.         p. 389

*Decided December 4th, 1914.*

Appeal from the Criminal Court. of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. C. Coleman* (with whom was *Eugene O'Dunne, Wilson J. Carroll* and *John E. Semmes, Jr.,* on the brief), for the appellant.

*Roland R. Marchant, Deputy State's Attorney of Baltimore City* (with whom were *Edgar Allan Poe, Attorney-General of the State of Maryland; Wm. F. Broening, State's Attorney of Baltimore City; Harry W. Nice, Assistant State's Attorney of Baltimore City,* on the brief), for the appellee, the State of Maryland.

BURKE, J., delivered the opinion of the Court.

In the year 1827, the Mayor and City Council of Baltimore passed the following ordinance (No. 17, approved March 2, 1827):

"Any person who shall fish, hunt, pitch quoits, or money, fly a kite, play bandy or ball, or any other

game or sport upon the Sabbath Day within the limits of the City, shall for each offense pay a fine of one dollar; and any ordinary or public garden keeper who shall suffer or allow in or upon his premises any kind of game or sport on the Sabbath Day shall for every individual so permitted to offend pay ten dollars."

The ordinance has ever since remained in force and effect. By the Act of 1898, Chapter 123, known as the City Charter, it was provided by section 906, sub-section 3, as follows:

"*And be it further enacted,* That all laws now in force relating or applicable to the Mayor and City Council of Baltimore or the City of Baltimore, and not included in this Act, and not inconsistent with said Act, and all ordinances of the Mayor and City Council of Baltimore now in force and not inconsistent with this Act, shall be and they are hereby continued until changed or repealed, respectively, by the General Assembly of Maryland or the Mayor and City Council of Baltimore."

By *express legislative provision* of the Act, this ordinance was continued in force until changed or repealed. The appellant was indicted, tried, convicted and sentenced in the Criminal Court of Baltimore for a violation of the ordinance, and from the judgment entered against him he has prosecuted this appeal. The indictment contained four counts, each of which in varying forms of expression charged him with playing baseball on Sunday, June 14, 1914, in the City of Baltimore. He demurred to the indictment and to each count thereof. The demurrer was overruled. Thereupon the appellant filed the following special plea:

"That to the north of the City of Baltimore, but within the limits thereof, is a large, natural park known as Druid Hill Park, consisting of about one hundred acres or more; that in the seclusion of the natural forest of said park, out of sight of all dwelling houses in said city, and remote from the drives and

walks in said park, this defendant on the afternoon of said June 14, 1914, the said day being Sunday, did participate with divers other persons in a certain form of outdoor exercise and recreation in the *American game of ball commonly called 'baseball'*; that the same was played purely voluntarily by all the persons participating therein, without reward and not for hire, without any charge or admission thereto being charged, exacted or accepted, nor was there any gratuity offered, given or accepted by anyone in connection therewith, directly or indirectly; that same recreation exercise and game was indulged in by this defendant in a quiet, peaceable manner, without noise or conduct in the disturbance of the public peace, all of which the defendant stands ready to verify."

A demurrer to this plea interposed by the State was sustained. The case then proceeded to trial under the plea of not guilty and resulted in a verdict of guilty, and the appellant was adjudged to pay a fine of one dollar and costs.

The position of the appellant is that the ordinance is unconstitutional and void, *first,* because it is repugnant to section 1 of the Fourteenth Amendment of the Constitution of the United States, and, *secondly,* because it is in violation of Article 36 of the Declaration of Rights of this State. This article is a guarantee of religious liberty to the inhabitants of Maryland. The provisions of this article and those of the Federal Constitution are so familiar that they need not be here transcribed.

It is important to note the precise legal question presented by the record. It is not whether the ordinance ought to have been passed or ought to be repealed or amended—not whether it is desirable and conducive to the best interests of the people to permit sports of this character, under proper regulations, to be indulged in on Sunday. These are purely political questions which must be determined by that department to which, under our system of government, they are

exclusively committed. They are questions of public policy
with which this Court has nothing to do, and, without express-
ing any opinion upon the wisdom, or the policy of the ordi-
nance, or the propriety of its repeal or amendment, to strike
it down for any of the reasons we have mentioned would be
rank judicial usurpation.

The Court will not declare an act or an ordinance uncon-
stitutional merely because it may think it unwise or inex-
pedient, nor will it strike it down because it will operate
harshly upon persons affected by it. It cannot be declared
void upon constitutional grounds unless it *plainly contravenes*
some provision of the Constitution. Nor are we called upon to
decide in a general way what amusements, or games, or
recreations the people of Baltimore may indulge in on Sun-
day without violating the terms of this ordinance. The terms
of the ordinance are sufficiently broad and comprehensive to
include the playing of baseball on Sunday in the City of
Baltimore, whether it is played under the circumstances stated
in the special plea or not. The appellant confessedly did
violate the provisions of the ordinance, and the sole ques-
tion for decision is this: Is the ordinance, in so far as it
prohibits the playing of baseball on Sunday in the City of
Baltimore, valid?

It is now generally held that laws and ordinances of this
character are passed in the exercise of the police power, and
it must be admitted that the State and the City have the
power to pass all proper laws and regulations of this nature
The ordinance was enacted by the Mayor and City Council
of Baltimore, and it has been expressly approved and con-
tinued in force by the Act of 1898, Chapter 123, and if it
was passed or ratified in the proper exercise of the police
power it is not obnoxious either to the Thirty-sixth Article
of the Declaration of Rights, or to the Fourteenth Amend-
ment of the Constitution of the United States.

Speaking generally, it may be said that the constitutional-
ity of Sunday laws, which relate to a great variety of acts, is
settled beyond a doubt, and it seems to be equally well settled

that they are upheld as a legitimate exercise of the police power. It is hard to conceive how the ordinance can be said to infringe any guaranty of religious liberty. We have never heard of a religious denomination which declared as an article of faith that it was the duty of its members to play baseball on Sunday. The ordinance, to use the language of the Court in *Specht* v. *Commonwealth*, 8 Penn. St. 312, "intermeddles not with the natural and indefeasible rights of all men to worship Almighty God according to the dictates of their own consciences; it compels none to attend, erect or support any place of worship, or to maintain any ministry against his consent; it pretends not to control or to interfere with the rights of conscience, and it establishes no preference for any religious establishment or mode of worship. It treats no religious doctrine as paramount in the State; it enforces no unwilling attendance upon the celebration of divine worship. It says not to the Jew or Sabbatarian, 'You shall desecrate the day you esteem as holy, and keep sacred to religion that we deem to be so.' It enters upon no discussion of rival claims of the first and seventh days of the week, nor pretends to bind upon the conscience of any man any conclusion upon a subject which each must decide for himself. It intrudes not into the domestic circle to dictate when, where or to what God its inmates shall address their orisons; nor does it presume to enter the synagogue of the Israelite, or the church of the seventh-day Christian, to command or even persuade their attendance in the temples of those who especially approach the altar on Sunday. It does not in the slightest degree infringe upon the Sabbath of any sect, or curtail their freedom of worship."

The same doctrine was announced in *Judefind* v. *State*, 78 Md. 510.

The Fourteenth Amendment to the Federal Constitution does not forbid the exercise of the police power by the States. It was said in *Stone* v. *Mississippi*, 101 U. S. 814, that "many attempts have been made by this Court and elsewhere to define the police power, and never with entire suc-

cess. It is always easier to determine whether a particular case comes within the general scope of the power, than to give an abstract definition of the power itself, which will be in all respects accurate." No one denies, however, that it extends to all matters affecting the public health or morals, public peace and order, and the public safety.

Speaking of the police power in the *Slaughter House cases,* 16 Wallace, 36, JUDGE MILLER said: "This power is, and must be from its very nature incapable of any very exact defi-. nition or limitation. Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property." What are subjects of the police power are necessarily judicial questions, and, therefore, the Courts have, within well defined limitations, a revisionary power and control over such legislation. What are the legitimate limits of this control? The subject of the police power was elaborately considered by JUDGE McSHERRY in *State* v. *Hyman,* 98 Md. 596, in which he discussed the power of judicial control and its limitations, and emphasized the distinction that must be observed by the Court when dealing with acts of the Legislature and ordinances of municipal corporations upon the subject of the police power. We quote the following portions of his opinion bearing upon the question before us: "It may be said in the language of the Supreme Court in *Mugler* v. *Kansas,* 123 U. S. 625, 'if a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has *no real or substantial relation to those objects* or is a palpable invasion of rights secured by the fundamental law, it is the duty of the Court to so adjudge and thereby give effect to the Constitution.' Running through all the cases, both Federal and State, is the doctrine that if the measure designed for, or purporting to concern, the protection or preservation of the public health, morals or safety, is one which has a *real and substantial relation to the police power,* then no matter how unreasonable nor how unwise the

measure itself may be, it is not for the judicial tribunals to
avoid or vacate it upon those grounds. Numerous illustra-
tions of this principle are furnished in reported cases. 'For
it must now be considered as an established principle of law
in this country, that there are no limits whatever to the legis-
lative powers of the States, except such as are prescribed in
their own Constitutions or in that of the United States;
consequently, that the Courts, in the performance of their
duty to confine the legislative department within the consti-
tutional limits of its power, cannot nullify and avoid a law,
simply because it conflicts with the judicial notions of natural
rights or morality or abstract justice." * * * "There is a
class of cases which must be distinguished from those which
hold that the unreasonableness of a police regulation adopted
by the Legislature furnishes no ground for the Court to strike
it down. The distinction is plain and simple. The Legis-
lature being the sole depository of the law-making power, it
is not for Courts of justice to say that a given enactment
passed in virtue of the police power, and having a direct rela-
tion to it, is void for unreasonableness, because of Courts
undertook to exercise such an authority they would in effect
exert a veto on legislation. But whenever power has been
delegated by the Legislature to a municipal corporation to
adopt and promulgate ordinances for the protection of the
public health, morals or safety, the *reasonableness* of the
measures enacted by the municipality is a feature to which
the Courts look to see whether the measure is within the
power granted; and they do this upon the assumption that
the Legislature did not intend to empower the municipality
to enact unreasonable or oppressive ordinances. Thus in
*Radecke's case,* 49 Md. 229, where an ordinance of Baltimore
City, which permitted the Mayor to revoke any license pre-
viously granted to erect a steam engine, was under review,
this Court said after alluding to quite a number of cases:
'While we may not be willing to adopt and follow many of
these cases, and while we hold that this power of control by
the Courts is one to be most cautiously exercised, we are yet

of opinion there may be a case in which an ordinance passed under grants of power like those we have cited, is so clearly unreasonable, so arbitrary, oppressive or partial, as to raise the presumption that the Legislature never intended to confer the power to pass it, and to justify the Courts in interfering and settting it aside as a plain abuse of authority. In applying the doctrine of judicial control to this extent, we contravene no decisions in our own State and impose no unnecessary restraints upon the action of municipal bodies.' The ordinance was set aside as a plain abuse of the authority delegated by the Legislature to the municipality. But when dealing with an Act of Assembly on this subject we have no such situation to confront us. If the Act has a real and substantial relation to the police power no inquiry as to its unreasonableness can arise, because it is the judgment of the law-makers and not of the Courts which must control; and if in the judgment of the former the thing be reasonable, all inquiry on that ground by the latter is foreclosed."

What the eminent chief judge said with respect to police enactments which deal with the protection of the public health, morals and safety apply with equal force to those which are concerned with the peace, order and quiet of the community on Sunday, for these social conditions are well recognized heads of the police power. Can the Court say that this ordinance has no real and substantial relation to the peace and order and quiet of Sunday, as a day of rest, in the City of Baltimore? Baseball is a fine game—cleaner and freer from danger than some others. It has taken a great hold upon the people. The public interest in it is confined to no one class—all classes are equally attracted by it, and thousands assemble to witness the game. It is usually accompanied by a great deal of loud noises. The noise of the spectators at the game and the conduct of the crowds that attend them may become very objectionable to thousands of people who look upon the Lord's day as the home day. The day of rest, quiet and peace, "drawing closer the sweet domestic ties by giving the toiler a day with his wife and chil-

dren." It is unfortunately true that there are tendencies and influences at work in our civilization to turn the day into one of labor and dissipation. As usual, greed lies at the bottom of this movement, and, while there are many popular enjoyments which are consistent with the sacredness of the day, as well as the proper observance of it, as a. day of rest, the tendency to commercialize and desecrate the day should be resisted and`checked.

Baseball in itself is a harmless and healthful recreation. But there are cases in the books in which injunctions have been issued to restrain the playing of the game on Sunday on the ground that the noises made disturbed the rest and quiet of persons residing in the neighborhood.

We have no doubt that the ordinance, so far as it prohibits the playing of baseball on Sunday, has a direct relation to the subject of the police `power—the promotion of peace, quiet and good order on Sunday—and was passed and ratified in the legitimate exercise of the police power, and is free from Constitutional objection. It is, therefore, the duty of the Court to sustain it. If the people of Baltimore are in favor of the repeal of the ordinance, or its amendment, so as to permit the playing of baseball on Sunday, they must apply to the proper legislative authority, and not to the Courts, which have no power to grant relief.

*Judgment affirmed, with costs.*