## THE MARYLAND STATE BOARD OF BARBER EXAMINERS *v.* KUHN ET AL.

[No. 90, September Term, 1973.]

*Decided December 5, 1973.*

498

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William E. Brannan,* with whom were *W. Miles Cole* and *Moore, Hennegan, Brannan & Carney* on the brief, for appellant.

*Alan I. Baron,* with whom were *Stephen H. Sachs* and *Frank, Bernstein, Conaway & Goldman* on the brief, for Charles F. Kuhn, Jr. et al., part of appellees. *George W. McManus, Jr.,* for Maryland State Board of Cosmetologists, other appellee.

LEVINE, J., delivered the opinion of the Court.

We are concerned here with the constitutionality of a statutory scheme which permits barbers to cut the hair of both men and women, but restricts cosmetologists,[1] such as appellees, to cutting the hair of women. We thus focus on two statutory provisions. Maryland Code (1957, 1973 Supp.) Art. 43, § 529 (a), under the subtitle, Cosmetologists, currently provides:

> "(a) The term 'beauty culture' includes any and all work done for compensation by any person which work is generally and usually performed by so-called hairdressers, cosmetologists, cosmetologists aides, cosmeticians, beauticians or beauty culturists and demonstrators of beauty

---

1. By § 3 of Ch. 278, Laws of 1961, the terms "hairdressers and beauty culturists" and "cosmetologists" are made virtually synonymous and may be used interchangeably.

preparations or equipment, and however denominated in so-called hairdressing and beauty shops *ordinarily patronized by women,* which work is for the embellishment, cleanliness and beautification of *women's hair, such as* arranging, dressing, curling, waving, permanent waving, cleansing, cutting, singeing, arching of eyebrows, dyeing of eyebrows and eyelashes, bleaching, coloring, or similar work thereon and thereabout, and the removal of superfluous hair, and the massaging, cleansing, stimulating, exercising, or similar work upon the scalp, face, arms or hands, by the use of mechanical or electrical apparatus or appliances or cosmetics, preparations, tonics, antiseptics, creams or lotions or by any other means, and of *manicuring the nails of either sex,* which *enumerated practices shall be inclusive of the term beauty culture but not in limitation thereof.*"(emphasis added).

Under the subtitle, State Board of Barber Examiners, § 323 of Art. 43 provided prior to July 1, 1973:

"To shave, trim the beard or cut the hair *of any person* or to give shampoos, tonics or massages for hire or reward received by the person performing such service, or any other person, shall be construed as practicing the occupation of a barber within the meaning of this subtitle." (emphasis added).

Effective July 1, 1973, this statute was amended to read:

"Within the meaning of this subtitle, the practicing of the occupation of a barber includes, but is not limited to, shaving, trimming the beard, cutting and razor cutting, styling, relaxing, body waving, shampooing, hair coloring, facial massaging, designing, fitting and cutting of hair pieces for hire or reward received by the person performing the service. These activities must be

"performed by a duly licensed barber or in a duly licensed barbering school except mere sales of wigs or hairpieces or where in the discretion of the Board, special circumstances merit exemption. This section shall not be construed as a limitation or restriction upon the services which licensed cosmetologists are permitted to perform pursuant to the provisions of this article."

Doubtlessly, the last sentence of this section, as now written, is designed to cushion the possible impact of the increased services currently being offered by barbers. In any event, we do not think that the expansion of services by barbers has any bearing on the outcome of this case. Nor does the deletion of the words "of any person" from the 1973 enactment suggest to us that the legislature intended any changes or restrictions in the barbers' clientele.

The chancellor (Perrott, J.) declared § 529 (a) unconstitutional as violative of the individual appellees' rights under the Fourteenth Amendment to the Constitution of the United States and Art. 46 of the Maryland Declaration of Rights.[2] We agree in part with the chancellor's holding, and therefore affirm.

This appeal stems from a bill of complaint brought by the individual appellees in the Circuit Court for Baltimore City against appellants and the Maryland State Board of Cosmetologists. The latter, being content with the decision of the chancellor, also appears before us as an appellee. In the bill of complaint, the individual appellees alleged that they have "on occasion engaged in the cutting, shampooing and styling of men's hair, and have built up a substantial clientele of male patrons seeking to have plaintiffs shampoo, cut and style their hair."

It was further alleged that as skilled beauty culturists and hairdressers licensed by the Board of Cosmetology, individual appellees are qualified to perform the services for

---

2. "Equality of rights under the law shall not be abridged or denied because of sex."

which they are licensed upon the hair of male customers, but that appellants have challenged their right to do so by threatening to institute proceedings against them that could result in the loss of their licenses and in criminal prosecution.

The proceedings in the circuit court followed an abortive attempt to pursue the same relief in the United States District Court for the District of Maryland, where, following the issuance of a temporary restraining order, a three-judge panel convened for an evidentiary hearing. That court invoked the doctrine of federal abstention, explicating its reasons for doing so in a carefully-considered opinion. The court's purpose in staying its hand was to enable the parties to pursue in the courts of this state a possible interpretation of the governing statutes that would make it unnecessary to reach the constitutional issues. By stipulation of the parties, the record in this case consists of the evidence presented in the federal court, *viz.*, three textbooks and the affidavits and testimony of two expert witnesses.

The witness produced by appellants was Simon V. Avara (Avara), President of the State Board of Barber Examiners, who is an experienced barber and licensed instructor in his own barbering school. Andrew Lombardo (Lombardo), an experienced beauty shop owner and operator with a teacher's license in cosmetology and ten years' prior experience as a licensed barber, was a witness for appellees. Each witness described rather extensively the various techniques that are employed in cutting men's and women's hair.

Avara pointed out that of the 1200 hours in the required curriculum for barber students, 650 are devoted to the cutting of hair, whereas only 200 of the 1500 hours in the cosmetology course are allotted to such instruction. In sum, he testified that the training in haircutting received by cosmetologists does not qualify them to cut men's hair. Lombardo testified, on the other hand — and Avara agreed — that licensed cosmetologists are competent to perform upon the hair of female patrons the services for which they are licensed; Avara also conceded that there is no difference

between male and female hair. He did not undertake to say that hygienic standards in barber shops are more stringent than those required of cosmetology shops; Lombardo, however, said the opposite is true.

In substance, Lombardo testified that although cosmetologists are not qualified to give the "traditional" male haircut — and do not seek to do so — they are trained and competent to provide the same haircuts on men which they are trained and licensed to perform on women patrons. We have studied the record carefully, and nowhere in Avara's testimony do we find that he actually contradicts Lombardo. Although the former devotes himself to emphasizing the intricacies of cutting male hair, it is apparent that he refers to the more traditional styles of male haircuts such as the "crew cut" and those facets of men's haircutting which require the use of a straight razor. Lombardo flatly states that such instruments are not found in cosmetology shops, since they are not used in cutting female hair. Instead, a type of safety razor is used when a particular style requiring it is selected. Nor, for the same reason, is the clipper, the traditional mainstay of every barber shop, found in cosmetology shops.

Therefore, the essence of Lombardo's testimony is that the cosmetologists seek merely to provide the identical haircut for male patrons that they are now trained and licensed to give their female customers; and this is the sole purpose for which male customers patronize their establishments. As he describes it, some men are currently bypassing barbershops because they fear that barbers, being untrained in the hairstyling techniques that are now allegedly sought by men in growing numbers, ". . . will cut it all off, cut it too short." In sum, "[t]he men who come into a woman's beauty shop . . . are seeking the type of care that a woman gets in the beauty shop."

In addition to readily conceding that cosmetologists are not qualified to cut all styles of male haircuts, Lombardo acknowledged that they are not trained to cut the hair of a black male. He explained, however, that they are trained to perform certain styling techniques which are sometimes

sought by black female patrons, and that these are available for black male customers with sufficiently long hair.

On the strength of this testimony, the chancellor found:

"1. There is no intrinsic physical difference between hair on a man's head and hair on a woman's head;

"2. That plaintiffs, as licensed cosmetologists, are competent to perform their services for the beautification of women's hair."

As a result, he struck down § 529 (a) as violative of the Fourteenth Amendment of the United States Constitution and Art. 46 of the Declaration of Rights, insofar as it prevents cosmetologists from rendering to males those services which they are licensed to perform upon female patrons. He implemented this declaration by enjoining all licensed cosmetologists from "holding themselves out to the public as barbers"; and by declaring that ". . . licensed cosmetologists may perform those services which they are qualified and licensed to perform as found by [the court] on both male and female patrons, but may not perform those services which only barbers are qualified and licensed to perform, as found by [the court], and set forth in Article 43 [§ 323]."

In urging reversal of the chancellor's decision, appellants contend that § 529 (a) is constitutional, and is violative of neither the Fourteenth Amendment nor Art. 46 of the Maryland Declaration of Rights. The legislature, they say, has merely ". . . constructed a clear pattern of regulation that recognizes the differences and separates the two professions, and that those patterns are constitutional." Thus, they argue, the legislative classifications are reasonable and justified; and appellees have failed to demonstrate affirmatively the unconstitutionality of the statute.

(1)

At the threshold, we are obliged to decide whether, as appellees have contended at every stage of these proceedings, § 529 (a) can constitutionally be construed to

permit cosmetologists to render the same services to male patrons as they are now licensed and trained to furnish to their female customers. It will be recalled that the federal court abstained from exercising jurisdiction because the statute under attack had never been authoritatively interpreted by the courts of this state. It was of the view that the statute could conceivably be construed so as to avoid entirely a determination of the constitutional question. The chancellor did not agree with that suggestion, nor do we.

In contending for a favorable interpretation of the statute that would obviate the need to decide the constitutional issues, appellees assert that § 529 (a) contains ". . . an open-ended definition which contemplates that beauty shops will be patronized by men as well as women for cosmetology services." Quoting from the federal court opinion, they focus upon the phrase, " '. . . beauty shops *ordinarily* patronized by women, . . . as an indication that men can procure cosmetology services in hairdressing and beauty shops since the phrase does not read . . . beauty shops *exclusively* patronized by women.' " (emphasis in original).

This argument, however, overlooks the phrase which immediately follows, "which work is for the embellishment, cleanliness and beautification of *women's* hair." (emphasis added). It also ignores the last practice enumerated in § 529 (a), "and of manicuring the nails of either sex." In short, where the legislature wished to indicate that a service was to be rendered to patrons of both sexes, it encountered no difficulty in expressing that intent in clear and unmistakable language. Nor do we share the view intimated by the federal court that from the final phrase in § 529 (a), "which enumerated practices shall be inclusive of the term beauty culture but not in limitation thereof[,]" one might "reasonably conclude that this provision broadens the statute to include any number of additional cosmetology services." It matters little whether the list of practices is expanded if it is nevertheless restricted to women patrons.

Apart from the language of § 529 (a) itself, which, as we have said, dispels any notion that the legislature intended the "practices" enumerated therein to be performed on

patrons of both sexes, we think appellees may have overlooked the origin of the statute. It was initially enacted as part of Ch. 282 of the Laws of 1935. Section 395 (a) of that enactment contained substantially the same language as § 529 (a) does today. To suggest that the legislature in 1935 was so possessed of clairvoyance that it could foresee such phenomena of the 1970's as the hirsute male and the "unisex" hair salon, simply strains credulity.

In rejecting the contention that this statute can be construed favorably to appellees without a resolution of the constitutional issues, we have not been unmindful of the principle of statutory construction that if a legislative act is susceptible of two reasonable interpretations, one of which would not involve a decision as to the constitutionality of the act while the other would, the construction which avoids the determination of constitutionality is to be preferred, *City of Baltimore v. Concord*, 257 Md. 132, 140, 262 A. 2d 755 (1970); *Sec'y of State v. Bryson*, 244 Md. 418, 423, 224 A. 2d 277 (1966); *Middleman v. Md.-Nat. Comm'n*, 232 Md. 285, 289, 192 A. 2d 782 (1963). We are, however, ineluctably led to the conclusion that any result short of deciding the constitutional issues would produce a strained construction of the statute.

(2)

As we have noted, the chancellor rested his decision, in part, on Art. 46 of the Maryland Declaration of Rights. Appellants maintain that this is not a case of sex discrimination because those who complain — the cosmetologists themselves — are not being denied under § 529 (a) "equality of rights" based on *their* sex. In other words, the statute does not discriminate against cosmetologists of either sex; nor, for that matter, is there discrimination based on sex between barbers.[3] Appellants tacitly concede that the result would possibly be different here if a group of males, individually and on behalf of others similarly situated, were complaining that because of their

---

**3.** Appellants estimate that 35% of the current enrollees in the barber schools of this state are females.

sex, they were being denied the services of cosmetologists on the strength of § 529 (a).

Nevertheless, appellees argue that in promoting ". . . a classification system which rests wholly on the sexual gender of the patron," the statute is vulnerable to attack under Art. 46. This, they say, produces the form of discrimination condemned in *Frontiero v. Richardson*, 411 U. S. 677, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973), where Justice Brennan, for the Court, said:

> ". . . classifications based upon sex, like classifications based upon race, alienage, or national origin, are inherently suspect, and must therefore be subject to strict judicial scrutiny. . . ."
> 36 L. Ed. 2d at 592.

The Supreme Court has refined the traditional rational basis test "and has said that a statutory classification based upon suspect criteria or affecting 'fundamental rights' will encounter equal protection difficulties unless justified by a *'compelling* governmental interest.' " (emphasis in original). *Schilb v. Kuebel*, 404 U. S. 357, 365, 92 S. Ct. 479, 30 L. Ed. 2d 502 (1971). More recently, discrimination based upon sex apparently has been included within the ambit of "suspect classifications," *Frontiero v. Richardson, supra.*[4] Despite the necessarily broad latitude given to state economic classifications, stricter scrutiny is exercised when classifications are based upon suspect criteria or affect fundamental personal rights, *see Weber v. Aetna Casualty & Surety Co.*, 406 U. S. 164, 172, 92 S. Ct. 1400, 31 L. Ed. 2d 768 (1972).

Appellants do not dispute this proposition, but simply claim that since this is not a case of sex discrimination, it is not one for application of the "compelling state interest" test. We agree that this is not a case of discrimination based on sex under the Fourteenth Amendment or Art. 46. Thus,

---

**4.** Only four members of the Court joined in the majority opinion in Frontiero v. Richardson, *supra*, which held that classifications based upon sex were "suspect."

the statutory classification under attack here is not subjected to the "stricter scrutiny" which must be exercised in cases involving "suspect classifications" and "fundamental personal rights." We pass then ˋ ᷉ the question of whether § 529 (a) is otherwise violative of the Fourteenth Amendment.

(3)

In cases brought under the Equal Protection Clause of the Fourteenth Amendment, but not involving so-called "suspect classifications" or "fundamental personal rights," the Supreme Court and this Court have applied the more traditional "rational relationship" or "fair and substantial relation" tests, which require, at a minimum, that a statutory classification bear some "rational relationship" to a legitimate state purpose, *Weber v. Aetna Casualty & Surety Co., supra; Morey v. Doud,* 354 U. S. 457, 463-64, 77 S. Ct. 1344, 1 L. Ed. 2d 1485 (1957); *Dasch v. Jackson,* 170 Md. 251, 265, 183 A. 534 (1936); *see Hearst Corp. v. St. Dep't of A. & T.,* 269 Md. 625, 644, 308 A. 2d 679 (1973) (dictum); *cf. City of Balto. v. Charles Ctr Parking,* 259 Md. 595, 598, 271 A. 2d 144 (1970); or that the legislative classification rest upon some ground of difference having a fair and substantial relation to the object of the legislation, *Reed v. Reed,* 404 U. S. 71, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971); *Schilb v. Kuebel, supra; McDonald v. Board of Election,* 394 U. S. 802, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969); *McGowan v. Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); *Adm'r, Motor Veh. Adm. v. Vogt,* 267 Md. 660, 677, 299 A. 2d 1 (1973).

It is urged by appellants that the "rational relationship" test applies, but they contend that the burden of showing that the statutory classification in § 529 (a) "does not rest upon any reasonable basis," *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 79, 31 S. Ct. 337, 55 L. Ed. 369 (1911), has not been met here by appellees. They contend that it is constitutionally permissible for the legislature to establish occupational classifications based upon differences in training. Thus, they argue, the statutory proscription against cosmetologists cutting men's hair is constitutional

because it protects the health, safety and welfare of male patrons whose hairstyles require the use of specialized techniques and instruments. These, they say, are administered only by barbers, who receive considerably more instruction in haircutting than do cosmetologists; furthermore, there are physiological differences between men and women which create the need for different training in techniques and instruments.

In advancing these arguments, appellants persist in overlooking the basic thrust of this case: That the relief requested by the cosmetologists will only permit them to render the same services for men's hair that they already lawfully and competently provide for women's hair; that there is no difference between the hair of males and females; that the cosmetologists do not seek, nor will they be permitted, to hold themselves out as barbers; that, in performing the same services and techniques upon men's hair that they already use on women's hair, they will employ the same instruments and not those which only barbers are trained to use in providing "conventional" male haircuts, and in shaving or trimming beards; and that the hygienic standards of their establishments are at least as high as those maintained in barber shops.

Although appellants make much of the superior haircutting instruction barbers receive over that acquired by cosmetology students, they seem oblivious to the fact that under the statutory scheme which they defend, the discrimination practiced against cosmetologists would prevail even if they were to receive increased training in cutting hair. Thus, the prohibition imposed upon cosmetologists by § 529 (a), from cutting and shampooing male hair in the same manner as they now cut and shampoo female hair, cannot be constitutionally sanctioned on the grounds contended for by appellants.

Nor do we find any merit in appellants' argument that to allow the relief sought by the cosmetologists in this case will result in racial discrimination because of the testimony that they are not trained to cut the hair of a black male. Again, appellants lose sight of the objective sought by appellees —

to render the same service to male patrons that are provided to female customers. We find no evidence in this case that the hair of black males differs from the hair of black females, or that cosmetologists are unqualified to cut the hair of black women. In addition, the evidence reveals that cosmetology students are trained in hair straightening and pressing. The point to be stressed as a complete answer to this argument, however, is that cosmetologists are barred by federal and state law from practicing racial discrimination. Whether or not appellees are in compliance with those constitutionally grounded restrictions is not before us in this case.[5]

Although we have not been presented with, nor have we found, any appellate decision dealing with the same issue being considered here, appellants rely upon *Bone v. State Board of Cosmetology*, 275 Cal. App. 2d 851, 80 Cal. Rptr. 164 (1969). That case, however, is clearly distinguishable. There, a licensed cosmetologist sought unsuccessfully to have a statute declared unconstitutional which barred him from operating what was deemed to be essentially a barber shop, employing only licensed cosmetologists instead of licensed barbers. Thus, unlike the case at bar in which cosmetologists are enjoined from holding themselves out as barbers, the California case clearly represented an attempt by licensed cosmetologists to engage in barbering.

Despite the heavy burden imposed upon appellees, *Lindsley v. Natural Carbonic Gas Co.; Adm'r, Motor Veh. Adm. v. Vogt*, both *supra; Potomac Sand & Gravel v. Governor*, 266 Md. 358, 293 A. 2d 241 (1972), *cert. denied* 409 U. S. 1040, 93 S. Ct. 525, 34 L. Ed. 2d 490 (1972); *Allied American Co. v. Comm'r*, 219 Md. 607, 150 A. 2d 421 (1959), they have established that to the extent § 529 (a) prohibits cosmetologists from rendering to male patrons the same services they may lawfully provide to female customers, it violates the Equal Protection Clause of the Fourteenth

---

5. We note the total absence from this record of any evidence that black persons of either sex have been refused service by barbers or cosmetologists on account of race.

510

Amendment. In sum, it neither rests upon some ground of difference having a fair and substantial relation to the object of the legislation, *Reed v. Reed; Schilb v. Kuebel; McDonald v. Board of Election; McGowan v. Maryland; Adm'r, Motor Veh. Adm. v. Vogt,* all *supra;* nor does it have a rational relationship to a legitimate state purpose, *Weber v. Aetna Casualty & Surety Co.; Morey v. Doud; Adm'r, Motor Veh. Adm. v. Vogt; Dasch v. Jackson,* all *supra.* In short, the classification established by § 529 (a) is without any reasonable basis and therefore is purely arbitrary, *Lindsley v. Natural Carbonic Gas Co., supra.*

(4)

Lastly, we consider appellees' contention that § 529 (a) arbitrarily and unreasonably limits their right to pursue a lawful occupation, and therefore denies them due process of law. The right of an individual to engage in a lawful business is protected under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and by Art. 23 of the Maryland Declaration of Rights, *Sigma Delta Chi v. Speaker,* 270 Md. 1, 7, 310 A. 2d 156 (1973); *Brooks v. State Board,* 233 Md. 98, 107, 195 A. 2d 728 (1963); *see Bruce v. Dir., Chesapeake Bay Aff.,* 261 Md. 585, 596, 276 A. 2d 200 (1971). As our predecessors said in *Dasch v. Jackson, supra:*

> "And while the right of the legislature to regulate a business, trade, or occupation, where such regulation is required for the protection of the public health, safety, or morals . . . is settled (citations omitted), it may not exercise that power arbitrarily or capriciously, or in such a manner as to deprive the individual of rights, privileges, immunities, or property to which he is entitled as a matter of natural justice and common usage, except for the protection of some real and substantial public interest. . . ." 170 Md. at 264.

This right, however, is subject to the lawful exercise of the police power by the state, pursuant to which it may regulate or restrict the freedom of the individual to act, when such

regulation or restraint is essential to the protection of the public health, morals, safety and welfare, *Dasch v. Jackson, supra; see Salisbury Beauty Schools v. St. Bd.*, 268 Md. 32, 57-58, 300 A. 2d 367 (1973).

Here, appellants argue that § 529 (a) is a reasonable exercise of the police power, and thus does not result in a denial of due process. We are therefore presented with the question whether the statute, as a purported exercise of the police power, bears a real and substantial relation to the public health, morals, safety, and welfare of the citizens of this state, *Liggett Co. v. Baldridge*, 278 U. S. 105, 111-12, 49 S. Ct. 57, 73 L. Ed. 204 (1928); *Maryland Board of Pharmacy v. Sav-A-Lot, Inc. et al*, 270 Md. 103, 311 A. 2d 242 (1973); *Stevens v. City of Salisbury*, 240 Md. 556, 564, 214 A. 2d 775 (1965); *Davis v. State*, 183 Md. 385, 393, 37 A. 2d 880 (1944); *Dasch v. Jackson, supra*. The wisdom or expediency of a law adopted in the exercise of the police power of the state is not subject to judicial review, and such a statute will not be held void if there are any considerations relating to the public welfare by which it can be supported, *Salisbury Beauty Schools v. St. Bd.; Davis v. State*, both *supra; State v. Seney Company*, 134 Md. 437, 448, 107 A. 189 (1919). Hence, this statute carries with it a strong presumption of constitutionality, *Maryland Board of Pharmacy v. Sav-A-Lot, Inc. et al, supra; Gino's v. Baltimore City*, 250 Md. 621, 636, 244 A. 2d 218 (1968); *Deems v. Western Maryland Ry.*, 247 Md. 95, 102, 231 A. 2d 514 (1967); *Magruder v. Hall of Rec'ds Comm.*, 221 Md. 1, 6, 155 A. 2d 899 (1959).

Nevertheless, if a statute purporting to have been enacted to protect the public health, morals, safety and welfare has no real or substantial relation to those objects or is a palpable invasion of rights secured by fundamental law, it is our duty to so adjudge and thereby give effect to the Constitution, *Mugler v. Kansas*, 123 U. S. 623, 661, 8 S. Ct. 273, 31 L. Ed. 205 (1887); *Maryland Board of Pharmacy v. Sav-A-Lot, Inc. et al, supra; Hiller v. State*, 124 Md. 385, 391, 92 A. 842 (1914); *State v. Hyman*, 98 Md. 596, 615, 57 A. 6 (1904).

The decisive question, then, is whether the means selected here bear a real and substantial relation to the object sought to be attained. We think they do not. Much of what we have said in disposing of the Equal Protection issue is applicable here. Manifestly, it cannot be seriously argued that if the object sought to be attained is the protection of the male public from inadequate training and inferior hygienic standards, the statute bears a real and substantial relation to that objective, when it is conceded that the very same services are rendered to female customers, for whom they are admittedly adequate. Section 529 (a) cannot withstand constitutional scrutiny; we therefore hold that it violates the Due Process Clause of the Fourteenth Amendment and Art. 23 of the Maryland Declaration of Rights.

*Decree affirmed; appellants to pay costs.*