**Catherine MARTINEAU, Plaintiff,**

v.

**John GHEZZI, Individually and as Secretary of State, State of New York, Defendant.**

**No. 74 Civ. 176.**

United States District Court,
N. D. New York.

Dec. 23, 1974.

Faith A. Seidenberg, Syracuse, N.Y., for plaintiff.

Louis J. Lefkowitz, Atty. Gen., of the State of New York by William J. Kogan, Asst. Atty. Gen., Albany, N.Y., for defendant.

Before TIMBERS, Circuit Judge, FOLEY, Chief District Judge, and BRIEANT, District Judge.*

## MEMORANDUM DECISION AND ORDER

BRIEANT, District Judge.

By her amended complaint, plaintiff, a licensed cosmetologist in the State of New York who also holds an apprentice barber's license, invokes our jurisdiction pursuant to 28 U.S.C. §§ 1343(3) and (4), 2281 (1970) and 42 U.S.C. §§ 1983 and 1988 (1970) seeking injunctive and other relief preventing enforcement, against her, by defendant, of the New York Statutes regulating the practice of barbering. New York has a statutory scheme for licensure and regulation of barbering, found in Article 28 of the General Business Law, N.Y.Gen.Bus. Law §§ 430–447 (McKinney's Consol. Laws, c. 20, 1968), as amended, (McKinney's Supp.1974–75) enacted substantially in its present form in 1946.[1] A companion scheme exists in Article 27 of the same law, N.Y.Gen.Bus.Law §§ 400–415 (McKinney's 1968), as amended, (McKinney's Supp.1974–75) to license and regulate the business of cosmetology.[2] The statutes do not prevent a person of either sex from holding

---

* Of the Southern District of New York, sitting by designation.

1. Section 430 of the General Business Law contains the legislative findings concerning "[t]he need for technical skill, training and experience, good health, good moral character and other fundamental qualities and qualifications in persons engaged in the practice of barbering, as herein defined . . . " and states legislative purposes "to safeguard and protect the barbers of this state from the evils of itinerant barbers . . . and to safeguard and protect the lives, health and well being of those persons who patronize the barber shops of our state by making adequate provision for the examination, licensing and regulation of the barber shops and the barbers and apprentices to whom such persons submit themselves for barber work." N.Y.Gen.Bus.Law § 430 (McKinney's 1968). Section 431(4) defines the scope of services which a barber may render.

"4. 'Practice of barbering' or 'barbering' means and includes the performance of the following practices upon the head of a human being for any purpose whatsoever except for the treatment of disease or of physical or mental ailments.

(a) Shaving or trimming the beard or cutting the hair of humans;

(b) Giving facial or scalp massage with oils, creams, lotions or other preparations, either by hand or mechanical appliances to males only.

(c) Singeing, shampooing, arranging, dressing or dyeing the hair of males only or applying hair tonic to males only.

(d) Applying cosmetic preparations, antiseptics, powders, oils, clays or lotions to scalp, face or neck of males only." *Id.* § 431(4).

2. The legislative findings and purposes supporting the provisions for the examination, licensing and regulation of "beauty parlors and [their] operators and technicians" are found in § 400 of the Geenral Business Law, N.Y.Gen.Bus.Law § 400 (McKinney's 1968), and are substantially identical to the findings and purposes relied upon to justify the regulation of barbers. See note 1, *supra.* In § 401(5) thereof the scope of the services which a cosmetologist may render is defined as follows:

"5. 'To engage in the practice of hairdressing and cosmetology' means and refers to a person who holds himself out directly or indirectly, as being able, or who offers or undertakes, by any means or method, with the aid of the hands or of mechanical, electrical or other apparatus or appliances, and/or by the use of tonics, lotions, creams, cosmetics, cosmetic preparations or compounds, to wave, dye, color, bleach, cut, arrange, dress, curl, cleanse, or stimulate the growth of the hair of the head of a female person or to massage, cleanse, or exercise the scalp, face, neck or arms of such person, or to do any similar work intended to enhance the appearance of such person; or to massage, cleanse, or exercise the scalp or stimulate the growth of the hair of the head of any person." *Id.* § 401(5).

either or both licenses, and thus operating upon the heads of male and female persons, but unless also licensed as a master barber, or acting as a licensed apprentice barber and working under the supervision of a licensed master barber, a licensed cosmetologist may not, *inter alia*, "wave, dye, color, bleach, cut, arrange, dress, [or] curl . . . the hair of the head" of *a male person*, N.Y. Gen.Bus.Law § 401(5) (McKinney's 1968) although a cosmetologist may "massage, cleanse, or exercise the scalp or stimulate the growth of the hair of the head of *any person*." *Id.* (emphasis added). A cosmetologist may not shave a person. A barber may cut the hair of persons without regard to their sex, N.Y.Gen.Bus.Law § 431(4)(a) (McKinney's 1968), but unless licensed also as a cosmetologist may not administer facial or scalp massage, singes, shampoo, hairdressing and similar services other than to male persons. *Id.* § 431(4)(b)–(d). Recently, "[those] members of the younger generation with a penchant for long tresses" [Mains v. Board of Barber Examiners, 249 Cal.App.2d 459, 57 Cal. Rptr. 573 (3rd Dist.Court of Appeals 1967)] have sought the services of trained cosmetologists in preference to barbers. Plaintiff has been cutting and styling their hair.

Defendant Ghezzi became Acting Secretary of State of the State of New York on January 1, 1974. Enforcement of the two licensing schemes mentioned is entrusted to him. N.Y.Gen.Bus.Law § 433 (McKinney's 1968). By an order issued May 16, 1974 after a hearing before defendant's subordinate, hearing officer Alex K. Gross, it was officially determined that plaintiff, not supervised by a licensed master barber, and while employed at Executive Chair Ltd., a corporation licensed to conduct a barbershop in the City of Syracuse in this District, colored the hair of a male customer. The plaintiff was held to have violated Section 432 of the New York General Business Law (McKinney's 1968) by "practicing barbering on the hair of a male person while not supervised by a master barber . . . ." For that, and also for other unrelated violations, defendant reprimanded plaintiff and her then employer. Should plaintiff continue to perform such services on male persons' hair, she faces further punitive sanctions.[3]

Accordingly, plaintiff presents an actual controversy in which she has a vital interest, with respect to whether the state statutes above mentioned violate the Due Process Clause of the Fourteenth Amendment of the Constitution to the extent they prohibit cosmetologists from rendering to male patrons all of the services they may provide lawfully to female patrons, and may also allege a claim under the Equal Protection Clause.[4] This Court has subject matter

---

3. Plaintiff may be convicted of a misdemeanor punishable by imprisonment for not more than six months, or by a fine of not more than five hundred dollars or both, and each violation shall be deemed a separate offense. N.Y.Gen.Bus.Law § 444 (McKinney's 1968). Furthermore, as a holder of an apprentice barber's certificate she may be reprimanded or a civil penalty not exceeding five hundred dollars may be imposed upon her by the defendant for practicing as a barber absent the supervision of a licensed master barber. *Id.* § 441(a)(8).

4. Plaintiff may sustain a Due Process claim if she demonstrates that the existing system of dual licensing has "[no] rational relation[ship] to a constitutionally permissible objective", *Harlan*, J., concurring in Ferguson v. Skrupa, 372 U.S. 726, 733, 83 S.Ct.

1028, 1032, 10 L.Ed.2d 93 (1963), and may prevail under the Equal Protection Clause if the "power to classify in the adoption of police laws" is exercised "without any reasonable basis, and therefore is purely arbitrary," Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911), or has "[no] rational relationship to a legitimate state purpose," Weber v. Aetna Cas. & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 30 L.Ed.2d 49 (1972). A master barber's license is available equally to men and women. Whether or not a haircutter, against whom no sex discrimination is practiced in issuance of either license, has standing to assert the equal protection claim of a patron of state licensed premises is a question we do not reach. *Cf.* Seidenberg v. McSorley's Old Ale House, Inc., 308 F.Supp. 1253 (S.D.N.Y.1969).

jurisdiction under the statutes previously mentioned, as well as jurisdiction over the parties. Defendant's motion, by undated Notice, to dismiss on jurisdictional grounds or for failure to state a claim is denied. Since injunctive relief is sought solely on constitutional grounds against enforcement of a state statute, and since the complaint is not obviously frivolous or wholly insubstantial [Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973)], this three-judge statutory court was properly convened.

In addition to the statutes previously mentioned, an amendment effective September 1, 1971 to the New York Executive Law Section 296(2) bears upon the issue.[5] That law in effect prevents the proprietor of "any place of public accommodation" from refusing privileges to any person because of sex. N.Y.Exec. Law § 296(2) (McKinney's Consol.Laws, c. 18, 1972), now N.Y.Exec.Law § 296(2)(a) (McKinney's Supp.1974–75). Barber shops and beauty parlors, in New York, are such places. N.Y.Exec. Law § 292(9) (McKinney's 1972). The Attorney General of New York, whose duties include the issuance and publication of legal opinions to state officials, has noted the apparent conflict. On November 30, 1971, the Attorney General advised defendant's predecessor in office, John P. Lomenzo, in part as follows:

"this section provides that the State Division of Human Rights may grant an exemption from the provisions barring discrimination because of sex in places of public accommodation 'based on bona fide considerations of public policy.'

It must be further noted that apart from the proscription of Executive Law, section 296, subd. 2, the fact that hairdressers and barbers are State licensees raises a constitutional question as to whether the State can, consistent with the purposes of the Fourteenth Amendment, exclude the patrons of such licensees on the basis of their sex.

\*　\*　\*　\*　\*　\*

In accordance with the legislative directive embodied in Executive Law, section 296, subd. 2, the question of determining whether the above described provisions of the General Business Law quality for exemptions based upon bona fide considerations of public policy should be left for initial determination by the State Division of Human Rights. Until the Division determines this question, the Department of State should refrain from imposing any penalties for hairdressers

---

5. This statute as now amended reads in part as follows:

"§ 296. Unlawful discriminatory practices

2(a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, *sex* or disability of any person, directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, *sex*, or disability, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, *sex*, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

(b) Nothing in this subdivision shall be construed to prevent the barring of any person, because of the *sex of such person*, from places of public accommodations, resort or amusement if the division grants an exemption based on bona fide considerations of public policy; nor shall this subdivision apply to the rental of rooms in a housing accommodation which restricts such rental to *individuals of one sex*." N.Y.Exec.Law § 296(2) (McKinney's Supp.1974–75). (Emphasis added)

or barbers who serve both male and female patrons."

Thereafter, in its "quarterly Law Review No. 1", issued for November 1972, the Executive Department of the State of New York, Division of Human Rights held:

"Barber Shops and Beauty Shops are places of public accommodation. (§ 292.9). A question arose as to the effect of the 1971 law on the sections of the General Business Law which provide for the licensing of hairdressers to do certain things to 'the hair of the head of a female person' (§ 401.5) and for the licensing of barbers to give facial or scalp massages and shampoos 'to males only' (§ 431.4). The State Attorney General advised that these questions 'should be left for initial determination by the State Division of Human Rights' (Opinion to Sec'y of State, 11/30/71). State Human Rights Commissioner Sable wrote the Secretary of State on June 5, 1972:

'. . . that the public policy reflected in the General Business Law and the provisions of the Executive Law, Sec. 296 subd. 2, applicable to sex discrimination in places of public accommodation, would require the servicing of any patron regardless of sex in licensed barber shops and beauty shops.

Exemption from the provisions of the Executive Law under Sec. 296 subd. 2 is hereby granted to permit barber shops and beauty shops to observe the requirements for licensure of barber operators and beautician operators under the General Business Law. In other words, a licensed barber shop owner or beauty shop owner must provide services to any person regardless of sex in 'the shop, provided the owner has licensed operators in each category to perform the services required by the patron.

This interpretation, however, is without prejudice to the power of the Commissioner of Human Rights, in the event of a complaint filed by an aggrieved person, to process said complaint in accordance with the provisions of the Human Rights Law and to render a determination based upon the facts as disclosed by an investigation and/or Hearing on said complaint.' "

In addition, there is now pending in the New York Supreme Court, New York County, an action under Index No. 0747/74 entitled New York State Hairdressers and Cosmetologists, et al. v. Ghezzi, in which that Court may resolve the apparent conflict in the aforementioned statutes, and may effect an authoritative interpretation of the regulatory scheme which will eliminate or limit the Constitutional issues which are before this Court.

■ Accordingly, this case presents a classic situation evoking the doctrine of abstention. Initially, regulation of beauty parlors and barbershops is essentially a state matter; New York has a positive commitment to equal protection of the sexes, found within the Executive Law previously cited. By abstaining, we will (1) avoid unnecessary questions of constitutional law where the case may be disposed of by a decision on issues of state law; (2) minimize federal interference in the state's administration of its own affairs; and (3) leave to the state the resolution of unsettled questions of state law. See Wright, Law of Federal Courts § 52 (2d ed.1970); Note, Federal Jurisdiction Over Challenges to State Welfare Programs, 72 Colum.L. Rev. 1404, 1440 (1972).

■ Abstention is not precluded by the plaintiff's reliance on civil rights statutes. See Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

■ A three-judge court in Maryland, in an unreported opinion (Kuhn v. The Maryland State Board of Barber Examiners, et al., decided March 12, 1971, D.Maryland, Civil No. 70–1301–T) abstained from the interpretation of

Maryland barbering and cosmetology statutes superficially similar to those before us, "pending a resolution of the matter in the state courts", relying on Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The same controversy was then resolved with finality by the Maryland Court of Appeals. See Maryland State Board of Barber Examiners v. Kuhn, 270 Md. 496, 312 A.2d 216 (1973) in which the state court notes that, "The [federal] court's purpose in staying its hand was to enable the parties to pursue in the courts of this state a possible interpretation of the governing statutes that would make it unnecessary to reach the constitutional issues." 312 A.2d at 219.

As pointed out in Idlewild Bon Voyage Liquor Corp. v. Rohan, 289 F.2d 426, 429 (2d Cir. 1961), modified and remanded on other grounds, sub nom., Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962):

> "The decision to abstain is a very different decision from the preliminary one of determining whether the case involves a substantial federal question. Such a determination, not being automatic, presupposes that the court has jurisdiction to decide the controversy even though it may, after due consideration, choose to surrender temporarily its power to decide. Inasmuch as *Stratton* [v. St. Louis S.W. Ry., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135 (1930)] has made it clear that only a three-judge district court has

the requisite jurisdiction to decide a complaint seeking injunctive relief from acts sought to be justifed by reliance upon a state statute because the statute, so applied, is repugnant to the federal constitution, we are of the opinion that the determination of whether a federal court ought to abstain is a determination that may only be made in the first instance by a three-judge district court."

See also Fhagen v. Miller, 306 F.Supp. 634 (S.D.N.Y.1969) and 312 F.Supp. 323 (S.D.N.Y.1970) (three-judge court); Maier v. Good, 325 F.Supp. 1268 (N.D. N.Y.1971) (three-judge court).

Abstention is clearly warranted in the instant case. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). Although the four month period within which an Article 78 Proceeding, N.Y. CPLR, Art. 78 (McKinney's 1973) may be initiated in the state court has expired, N.Y. CPLR § 217 (McKinney's 1972), plaintiff may initiate an action for declaratory and injunctive relief in the Supreme Court of Onondaga County, see New York CPLR § 3001; Bunis v. Conway, 17 App.Div.2d 207, 234. N.Y.S. 2d 435, 437–438 (4th Dept.1962), or, if so advised, may apply to intervene in the action previously mentioned which is pending trial in New York County. New York CPLR §§ 1012, 1013 (McKinney's 1963).[6]

Nothing herein should be deemed to imply any conclusion on our part with

---

6. We recognize that federal courts have declined to abstain from determination of the barber-beautician controversy in other states. Cases in which the issue was resolved include Tuozzoli v. Killian, 386 F. Supp. 9 (D.Conn.1974) in which plaintiff was granted declaratory relief only, by a single Judge; Bolton v. Texas Board of Barber Examiners, 350 F.Supp. 494 (N.D.Texas 1972), aff'd, 409 U.S. 807, 93 S.Ct. 52, 34 L.Ed.2d 68 (1972), and Pavone v. Louisiana State Board of Barber Examiners, 364 F. Supp. 961 (E.D.La.1973). Each of these three cases is distinguishable on its facts. In *Tuozzoli, supra*, defendants suggested no

state interest served by a legislative scheme which, unlike New York's statute, prevented the practice of "hairdressing" of women in a barbershop, so that, as Judge Newman observed, plaintiffs although eligible for both licenses, would "be compelled in effect to give up 'hairdressing' if they chose to take up 'barbering'." There were no conflicting statutes cited to the Court. *Bolton, supra,* involved a consent judgment affecting a statutory scheme possessing no apparent ambiguity. *Pavone, supra,* is closer, factually to the instant case, but again, in that case no ambiguity or conflict existed in the state law as is found here.

respect to the merits of the controversy. For the reasons stated, this Court will stay its hand while the parties proceed to the state courts for a resolution of the meaning and validity of the relevant statutes. Pending such resolution, or our further or different direction, we retain jurisdiction over the parties and the subject matter of this action. See Zwickler v. Koota, 389 U.S. 241, 244, n. 4, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Railroad Commission of Texas v. Pullman Co., *supra*.

See also, D.C., 378 F.Supp. 1354.