373 A.2d 160.

CHRISTIAAN'S, INC. *et al. vs.* MARGO CHOBANIAN *et al.*

MAY 10, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. The plaintiffs in this civil action are two corporations licensed to operate hairdressing establishments in this state and a hairdressers' and cosmeticians' trade association. They seek a declaration that G.L. 1956 (1976 Reenactment) §§5-10-1(a) and (h) are unconstitutional insofar as they prohibit licensed hairdressers and cosmeticians from performing for males the same services they perform for females.[1] The case was heard in the Superior Court on an agreed statement of facts wherein the parties stipulated, *inter alia*, that many men are desirous of services that, under the statute, hairdressers and cosmeticians may only provide to women. The result in

---

[1] General Laws 1956 (1976 Reenactment) §5-10-1 defines the terms used in chapter 10 of title 5, which is concerned with the licensing and regulation of hairdressers, cosmeticians and manicurists. Section 5-10-1(a) provides in pertinent part:

> " 'Hairdresser and cosmetician' shall mean any person who arranges, dresses, curls, cuts, waves, singes, bleaches or colors the hair or treats the scalp or manicures the nails of *any female person* * * * or who * * * engages * * * in massaging, cleansing. stimulating, manipulating, exercising or beautifying * * * the neck, face or arms or who removes superfluous hair from the body of *any female person.*" (Emphasis added.)

Section 5-10-1 (h) provides:

> " 'The practice of hairdressing and cosmetic therapy' shall mean the engaging by any person in any one or more of the following practices: the application of the hands or of mechanical or electrical apparatus, with or without cosmetic preparations, tonics, lotions, cremes, antiseptics or clays, to message, cleanse, stimulate, manipulate, exercise or otherwise to improve or to beautify the scalp, face, neck, shoulders, arms, bust or upper part of the body or the manicuring of the nails of *any female person;* or the removing of superfluous hair from the body of *any female person;* or the arranging, dressing, curling, waving, cleansing, cutting, singeing, bleaching, coloring or similarly treating the hair of *any female person.*" (Emphasis added.)

the Superior Court was a judgment declaring that the challenged provisions violate the due process and equal protection clauses of the fourteenth amendment to the Federal Constitution. Injunctive relief, though sought, was not granted. Only the defendants have appealed.

Authorities elsewhere, with but a single exception, have ruled that legislation similar to §§5-10-1(a) and (h), whether analyzed in equal protection or due process terms, does not pass constitutional muster.[2] Indeed, one court went so far as to say that a similar statute was "so patently unconstitutional as not to present a substantial constitutional question." *Pavone* v. *Louisiana State Bd. of Barbers Examiners*, 505 F.2d 1022, 1023 (5th Cir. 1974). In our opinion, the same is true of our statute.

Although there is little we can add to what has already been said elsewhere on this subject, a brief review of the relevant constitutional principles seems warranted. Under a due process analysis—and we need go no further—the state, in the exercise of its police power, may regulate hairdressers and cosmeticians. *State* v. *Conragan*, 58 R.I. 313, 319, 192 A. 752, 755 (1937). The exercise of that power is not without constitutional limitations, however; the means chosen must bear a real and substantial rela-

---

[2]*Tuozzoli* v. *Killian*, 386 F. Supp. 9 (D. Conn. 1974); *Pavone* v. *Louisiana State Bd. of Barber Examiners*, 364 F. Supp. 961 (E.D. La. 1973), aff'd, 505 F.2d 1022 (5th Cir. 1974); *Bolton* v. *Texas Bd. of Barber Examiners*, 350 F. Supp. 494 (N.D. Tex.), aff'd mem., 409 U.S. 807, 93 S.Ct. 52, 34 L.Ed. 2d 68 (1972); *People* v. *Taylor*, 189 Colo. 202, 540 P.2d 320 (1975); *Maryland State Bd. of Barber Examiners* v. *Kuhn*, 270 Md. 496, 312 A.2d 216 (1973); *People* v. *McDonald*, 67 Mich. App. 64, 240 N.W.2d 268 (1976); *Minnesota Bd. of Barber Examiners* v. *Laurance*, 300 Minn. 203, 218 N.W.2d 692 (1974); *New York State Hairdressers & Cosmetologists Ass'n* v. *Cuomo*, 83 Misc. 2d 154, 369 N.Y.S.2d 965 (Sup. Ct. 1975); *Leetham* v. *McGinn*, 524 P.2d 323 (Utah 1974).

We are aware of only one case upholding the constitutionality of such a statute — and that by a divided court. *Green* v. *Shama*, 217 N.W.2d 547 (Iowa 1974).

tion to the public health, safety, morals, or general welfare in connection with the subject being regulated. *Berger* v. *State Bd. of Hairdressing,* 118 R.I. 55, 371 A.2d 1053 (1977); *Amitrano* v. *Barbaro,* 61 R.I. 424, 428, 1 A.2d 109, 111 (1938).

In particular, the end to be served in the regulation of hairdressers and cosmeticians is to ensure that the activities in which they engage are not dangerous or injurious to the health of the community. *State* v. *Conragan, supra* at 318, 192 A. at 755. To accomplish that purpose, the state is justified in enacting regulations designed to make certain that sanitary conditions are maintained in the establishments where such services are performed and that hairdressers and cosmeticians possess at least a minimum degree of competence. *See id.* at 319, 192 A. at 755. It seems to us, just as it has to the authorities elsewhere and to the trial justice in this case, that the issuance of a hairdresser's and cosmetician's license to a person and the certification that his business establishment meets minimum sanitation standards satisfies both of those purposes and dispels any reasonable basis for barring males as customers. *See, e.g., People* v. *Taylor,* 189 Colo. 202, 205, 540 P.2d 320, 322 (1975); *Maryland State Bd. of Barber Examiners* v. *Kuhn,* 270 Md. 496, 512, 312 A.2d 216, 225 (1973).

The defendants argue, however, that hairdressers and cosmeticians may lack the training to cut most men's hair and that consequently they are not as well-qualified as barbers to cut a man's hair and to apply cosmetics to his person. That argument is answered in part by the parties' stipulation that "[m]any men are desirous of the services rendered by hairdressers and cosemtologists." Presumably, that desire merely reflects the opinion of men who believe that hairdressers and cosmeticians can better serve their wants than can barbers. A further answer is found in the judicially noticed fact that unisex hairstyles are now in

204

vogue. In these circumstances, defendants' fears that hairdressers and cosmeticians are not as well-suited as barbers to cut and style male hair or to apply cosmetics to men are better left to the marketplace for resolution than to the Legislature or to the courts. *Green* v. *Shama,* 217 N.W. 2d 547, 560 (Iowa 1974) (McCormick, J., dissenting); *see People* v. *Taylor, supra* at 206, 540 P.2d at 322.

For the foregoing reasons, we hold that the exclusion of male customers from licensed hairdressers' and cosmeticians' shops lacks a reasonable basis and is therefore violative of the due process clause of the fourteenth amendment. That we so conclude does not mean that hairdressers and cosmeticians may hold themselves out as barbers or that they may render services presently denied to them but permitted to barbers. It simply means that they may provide exactly the same services to men as §§5-10-1(a) and (h) now permit them to provide to women. *Accord, e.g., Maryland State Bd. of Barber Examiners* v. *Kuhn, supra* at 508, 312 A.2d at 223.

The defendants' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court.

*Leo T. Connors,* for plaintiffs.

*Julius C. Michaelson,* Attorney General, *Forrest Avila,* Special Asst. Attorney General, for defendants.