## LUZIER SPECIAL FORMULA LABORATORIES v. STATE BOARD OF HAIRDRESSING AND BEAUTY CULTURE EXAMINERS AND OTHERS.[1]

May 19, 1933.

No. 29,424.

[1]Reported in 248 N. W. 664.

152

*Arthur T. Nelson,* for appellant.

*Harry H. Peterson,* Attorney General, and *Harry W. Oehler,* Deputy Attorney General, for respondents.

*HOLT, Justice.*

Plaintiff appeals from the order overruling its demurrer to defendants' answer and refusing a temporary injunction. The court certified that the demurrer presented doubtful and important questions.

Plaintiff is a Missouri corporation engaged in the manufacture and sale of face creams, hair tonics, face powders, depilatories, shampoos, nail polishes, skin tonics, and deodorants, its plant located in Missouri. The complaint alleges that for several years plaintiff's manufactured goods and wares have been sold by its salesmen to citizens and residents of this state by taking orders, mailing the orders to plaintiff in Missouri, where they are filled and then sent to the purchasers in this state in original packages; that in procuring such orders its salesmen instruct the prospective customers in the application of the goods and give demonstrations on

the customers as to how the same are to be used, but no charge is made to them therefor nor are they under any obligation to order or purchase any goods on account thereof; that plaintiff's salesmen solicit customers by telephone and establish a salesroom in licensed beauty shops, and, in some cases, where the customer desires, demonstrations are made in the customer's home; that its salesmen do not treat skin diseases, nor marcel wave hair, nor give permanent hair waves or round waving or finger waving of hair, nor do they use electrical devices in arranging or dressing hair, nor do they bleach or color hair, but sell a product to give a lighter sheen to the same. The complaint alleges that under L. 1927, p. 349, c. 245, 1 Mason Minn. St. 1927, §§ 5846-27 to 5846-47, pursuant to which defendants function, they instituted criminal proceedings against one of plaintiff's salesmen in the municipal court of Minneapolis, where a trial resulted in an acquittal; that they instituted criminal proceedings against two others in a justice court in Wright county, but when reached for trial the cases were dismissed; and that others of plaintiff's salesmen have been harassed with threats of prosecution and persecuted in various ways. The complaint also alleges that the act referred to unlawfully discriminates against plaintiff, a nonresident, and violates various provisions of the constitution of the United States. It also avers that the standard of training of 625 hours, required by defendants of one to be licensed under the act, is unreasonable. And plaintiff asked for a temporary and permanent injunction.

The answer admitted that plaintiff was in the business of manufacturing cosmetic preparations in the state of Missouri and selling the same in this state and maintains salesmen who employ the practice of promoting sales by demonstrating the use of such goods by applying the same to the upper parts of the bodies of living persons who are prospective customers and patrons for the purposes of beautification by means of manual manipulation and otherwise; that the making of such demonstrations constituted a substantial portion of the services rendered by such agents to plaintiff in the course of their employment, for which services plaintiff has paid

and is presently paying compensation in the form of commissions upon sales actually made. The answer avers that the agents of plaintiff are violating the law, and asserts the intention of defendants to prosecute them unless they cease so doing.

The answer puts in issue the allegations of the complaint that plaintiff's salesmen do not violate L. 1927, p. 349, c. 245. It avers that plaintiff's salesmen have obtained no license to apply upon the upper bodies of its proposed customers its lotions, creams, and wares for beautifying purposes. By not denying plaintiff's allegation that its salesmen do not demonstrate hairdressing, we take it that the violation of the act is confined to practicing as beauty culturists without license. The answer also avers that these salesmen are compensated by plaintiff, and the act does not provide that compensation must come directly from the one who receives the treatment. So the demurrer was properly overruled, unless the law is invalid because violative of some provision of either the federal or state constitution.

The act no doubt is in the exercise of the police power of the state. It seeks to regulate a lawful occupation. And as to such the regulation must be reasonable and confined to what public health and welfare demands. But hairdressing and beauty culture is of the same nature as barbering. In its practice contagious and communicable diseases of the skin, scalp, and of other parts of the body are met with, and precautions of various kinds are needed to protect public health and welfare. The reasons are sufficiently stated in State v. Zeno, 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 A. S. R. 422, in sustaining the barber law against the same constitutional objections made here.

There is, however, a new contention made by plaintiff that deserves some consideration. It is based on Baker v. Daly (D. C.) 15 F. (2d) 881, where the court enjoined the enforcement of an Oregon cosmetic therapy law because repugnant to the fourteenth amendment to the federal constitution, in that it prohibited a person engaging in one of several lawful occupations unless he qualified to engage in all. It was there said, in substance, that to justify

the exercise of the police power of the state in the regulation of a lawful calling public interest must require its interposition, and the means adopted must be reasonably necessary and not unduly oppressive to the individual. As we view this law, it is not aimed at more than one vocation, and hence Baker v. Daly (D. C.) 15 F. (2d) 881, does not apply. Often a vocation requires the ability to do distinct operations. The title to the act in question reads [L. 1927, c. 245]:

"An act to regulate the occupation of hairdressers and beauty culturists, to create a state board of examiners for the licensing of persons to carry on and instruct in such practices and for the approving of hairdressing and beauty culture schools to insure the better education and training of such practitioners to provide rules regulating the proper conduct and sanitation of hairdressing and beauty culture shops and schools for the protection of the public health, and to provide penalties for violation thereof.

"Section 1. It shall be unlawful for any person to engage in the occupation of hairdresser and beauty culturist, or to conduct a hairdressing and beauty culture shop or school," etc.

Section 2 contains definitions, and (a) thereof defines what constitutes hairdressing and beauty culture thus: "Any person who engages for compensation in the following practices, to-wit: arranging, dressing, curling, waving, cleansing, singeing, bleaching, coloring, or similar work upon the hair of any living person by any means, or slight hair trimming of women, as a part of women's hairdressing; the use of cosmetic preparations, antiseptics, tonics, lotions, or creams, aided with the hands or mechanical or electrical apparatus, or appliances used in massaging, cleansing, stimulating, manipulating, exercising, beautifying, the scalp, face, neck, arms, bust or upper part of the body for purposes of beautification, shall be defined as and construed to be practicing hairdressing and beauty culture."

It is plain that both in the title and body of the act it is assumed that hairdressing and beauty culture is one and not two occupations; that is, a shop which dresses hair also gives beauty culture,

and so a school which teaches hairdressing also teaches how to beautify the upper part of the body. Likewise a barber's occupation embraces both trimming of hair and shaving. The act in question relates more particularly to the hairdressing and beautifying of women. And it is common knowledge that dressing women's hair goes hand in hand with the effort to beautify the face and other exposed parts of their bodies by the various means above mentioned, so that the same person or shop which does the one usually can do or does the other. It is not necessary to hold that the law includes two occupations so as to make it invalid under Baker v. Daly (D. C.) 15 F. (2d) 881. This conclusion also answers the contention that the law embraces more than one subject and therefore contravenes art. 4, § 27, of the state constitution.

Plaintiff relies on Marx v. Maybury (D. C.) 30 F. (2d) 839, holding certain provisions of the Washington barber law void as unreasonable and beyond the police power of the state. It was a suit in equity where three judges, sitting according to the practice of the federal courts, issued an injunction restraining the defendant, the director of state licenses, from interfering with the number of student apprentices which the plaintiff, the operator of a barber school, may employ. The court expressed no opinion on any other provision of the law. A few months later in Marx v. Maybury (D. C.) 36 F. (2d) 397, 398, another suit in equity to enjoin the enforcement of the same law was decided by three federal judges, one of whom participated in the first case. There the temporary restraining order was dissolved, except as to the enforcement of the one provision of the act which purported to give the director of licenses the power to revoke or withhold permit from a barber school when in his judgment it is not financially able to carry out any contract for instruction, uncontrolled by any standard or rule or provision of review. This provision was held repugnant to the due process clause of the fourteenth amendment. The right of the state properly to regulate and control the occupation of barbers was there fully considered and authorities cited, including State v. Zeno, 79 Minn. 80, 81 N. W. 748, and the court said [36 F. (2d) 398]:

"Large discretion is vested in the Legislature, not only to determine what the public interest requires, but to adopt measures necessary for such protection * * * and every reasonable presumption must be indulged in favor of the statute. Sinking Fund Cases, 99 U. S. 700, 25 L. ed. 496. The constitution must, however, guide the judicial determination, and, where the measure adopted is appropriate and calculated to accomplish the end sought, the legislative discretion is not for review by the court. The conclusion must follow that the state has power to enforce reasonable regulation of the barber trade. Marx v. Maybury (D. C.) 30 F. (2d) 839, is not to the contrary."

The occupation of hairdressing and beauty culture is not essentially different from that of the barber.

Plaintiff relies on Banghart v. Walsh, 339 Ill. 133, 171 N. E. 154, where it was held that since the title of the barber's act limited the subject matter to the barber business, nothing therein could include beauty shops; and hence the provision denying the beauty culturists the right to cut the hair of women without procuring a barber's license was violative of the fourteenth amendment. This decision does not aid plaintiff. The court held that the reasons for the licensing of barbers apply equally to the licensing of beauty culturists; that the two occupations are considered distinct in that the one deals with men and the other with women; and that the beauty culturist does not invade the occupation of a barber when in dressing women's hair there is occasion to cut or trim it.

We cannot see how the law interferes with the interstate commerce which plaintiff carries on in this state. It is free to sell its goods everywhere, but may not carry on the occupation of beauty culturist by its salesmen unless they are licensed. The answer alleges that it does, and as against the demurrer this must be taken as true. American S. M. Co. v. Jaworski, 179 Wis. 634, 192 N. W. 50, is cited by plaintiff, but the demonstration there was of a machine sold in interstate commerce. The salesman there did not demonstrate upon the bodies of customers. The fact that a few of the prosecutions of plaintiff's salesmen have resulted in acquittals

or dismissals without trials is not of great importance in determining the merits of the answer nor in deciding whether the trial court abused judicial discretion in denying a temporary injunction.

The order is affirmed.

