# MINNESOTA BOARD OF BARBER EXAMINERS v. JACK LAURANCE, INDIVIDUALLY AND d.b.a. LAURANCE INTERNATIONAL COIFFURES.

218 N. W. 2d 692.

May 24, 1974—No. 44357.

*Larkin, Hoffman, Daly & Lindgren* and *James P. Larkin,* for appellant.

*Bergstein & Foster, Sherman Bergstein,* and *Curtis H. Foster,* for respondent.

Heard before Kelly, Scott, and McRae, JJ., and considered and decided by the court.

PER CURIAM.

Action in the Hennepin County District Court brought by the Minnesota Board of Barber Examiners for an injunction restraining Jack Laurance, defendant, a registered cosmetologist, from practicing barbering without a license. The lower court ordered judgment for defendant and denied the prayer for injunction and further denied the board's post-trial alternative motion to amend the complaint to seek declaratory relief or for a new trial. The board appeals from the judgment and from denial of its post-trial motion. Affirmed.

The board contends that the activity of defendant of "cutting" hair, without any evidence or allegations that the defendant had

given shaves, trimmed the beards of men, or performed similar functions that are limited exclusively to licensed barbers, constitutes barbering under Minn. St. 154.02.

The board concedes:

"Beauty operators are licensed under Chapter 155 and under that statute they are permitted to trim the hair. The statute reads the 'hair of women' and I think that it is simply a historical accident that at that time women were the only ones that beauticians worked upon. We don't believe that that distinction is significant in terms of the issue in the present case."

The board has, in other words, attempted to frame the issue in terms of the distinction in the statutory requirements for the respective licensing of barbers and beauty operators. We conclude, however, that the basic issue to be confronted exists in the distinction between cutting the hair of men and of women, and the power of the state to regulate these classifications.

The lower court found that defendant has "severed, by scissors, hair growing on the heads of both males and females," and this was uncontroverted by defendant. Substantial testimony indicates that, although a considerable amount of time is spent in training barbers to cut hair, cosmetologists are not so extensively trained in this area. The statutory requirements regarding the qualifications for licensing as a barber or as a cosmetologist do not aid this court in determining that the amount of instruction given in the art of cutting hair is of substantial importance in the distinction between these two professions. Minn. St. 154.07 lists the requirements to be met by schools of barbering before the certification of a barber upon graduation. While the statute specifies that a total of 1,500 hours of instruction must be given, it is silent in the area of the particular breakdown of this total with regard to hair cutting, shampooing, or the like.

Minn. St. 155.09, subd. 1(4), provides that before one may qualify for a certificate of graduation from a school of beauty culture, the license applicant must have received 1,500 hours of

instruction in the curriculum established by the board of cosmetology. Again, there is no particularization required for training in each specified area of competence.

Therefore, although testimony indicates that, as a practical matter, more training is given to barber students in the area of hair cutting, there is neither a sufficient statutory standard nor other satisfactory evidence to establish that licensed cosmetologists are not qualified to cut hair.

Defendant himself, as well as several other witnesses, testified that, apart from a possible aesthetic preference, there is no discernible difference between the cutting of men's and women's hair. With relation to health and safety factors, no witness was able to conclude that the cutting of men's hair by a licensed cosmetologist would create a danger to the public, or that the sanitation requirements under either licensing procedure are possibly deleterious to the general health and welfare. Finally, one witness distinguished the terms hair "cutting" and "trimming" as follows: In hair trimming, one is "merely amending to an established style or creation and [in] hair cutting you are starting from scratch and creating anew."

The statutes of relevance are the following:

"154.02 Any one or the combination of the following practices when done upon the head and neck for cosmetic purposes and not for the treatment of disease or physical or mental ailments and when done for payment directly or indirectly or without payment for the public generally constitutes the practice of barbering within the meaning of this chapter: to shave, trim the beard, cut or bob the hair of any person of either sex for compensation or other reward received by the person performing such service or any other person; to give facial and scalp massage or treatments with oils, creams, lotions, or other preparations either by hand or mechanical appliances; to singe, shampoo the hair, or apply hair tonics; or to apply cosmetic preparations, antiseptics, powders, oils, clays, or lotions to scalp, face, or neck."

and Minn. St. 155.02, subd. 2, relating to cosmetologists:

"Subd. 2.   Any person who engages in the practice, for compensation or other reward, in any one or any combination of the following practices: arranging, dressing, curling, waving, cleansing, singeing, bleaching, coloring, or similar work upon the hair of any living person by any means, or hair trimming of women, as part of women's hairdressing; the use of cosmetic preparations, antiseptics, tonics, lotions, or creams, aided with the hands or mechanical or electric apparatus, or appliances used in massaging, cleansing, stimulating, manipulating, exercising, beautifying, the scalp, face, neck, arms, hands, bust, or upper part of the body for the purpose of beautification, shall be defined as and construed to be practicing hairdressing and beauty culture."

The evident distinction, upon a reading of these two statutes, is that one who is licensed to practice barbering under Minn. St. 154.02 is empowered to cut the hair of either sex, while under Minn. St. 155.02, subd. 2, one licensed as a cosmetologist is strictly limited to the "hair trimming of women" as an incident or a mere preliminary to the other activities of hairdressing. It is with this latter limitation that we find an unconstitutional classification.

As was stated in the case of Lee v. Delmont, 228 Minn. 101, 36 N. W. 2d 530 (1949), it is well established that the trade of barbering, the teaching thereof, and the operation or management of a barber school require technical training, study, and experience in order to safeguard the public health and welfare, and that the regulation thereof is therefore a proper exercise of the state's police power.

Further, several case authorities have established the principle that the purpose of regulating barbers and cosmetologists has historically been the legislature's desire to protect those persons receiving their services from contracting contagious skin diseases or from coming into contact with unsanitary conditions.

See, State v. Zeno, 79 Minn. 80, 84, 81 N. W. 748, 749 (1900); Luzier S. F. Laboratories v. State Bd. 189 Minn. 151, 154, 248 N. W. 664, 665 (1933); State v. Sullivan, 245 Minn. 103, 107, 71 N. W. 2d 895, 898 (1955); Banghart v. Walsh, 339 Ill. 132, 171 N. E. 154 (1930). This court has definitively supported this unquestionably valid exercise of the state's police power in facilitating and upholding the general health and welfare.

However, this court has prevented the exercise of this police power beyond established, constitutional boundaries. The case of Johnson v. Ervin, 205 Minn. 84, 285 N. W. 77 (1939), upon which we must heavily rely, exemplifies this. There, the plaintiff, a licensed beauty culturist, sought a declaratory judgment determining that two sections of the act regulating and licensing barbers were unconstitutional and to enjoin enforcement thereof. The provisions challenged were predecessors of our present Minn. St. 154.02, set forth above, and 154.04, which lists the exemptions from application of the barbering statutes. The complaint essentially averred that the then beauty culture statute, predecessor to Minn. St. 155.02, authorized those licensed thereunder to do "slight hair trimming of women as a part of women's hairdressing," but that the statute regulating barbering absolutely prohibited anyone except a licensed barber to cut hair. It was further claimed that these two sections of the barbering statutes contravened Minn. Const. art. 1, § 7, and U. S. Const. Amends. V and XIV. This court found that there were no substantial differences with regard to the sanitary regulations and the qualifications for the licensing under these two chapters. However, the court concluded, in language that is specifically applicable to the case before us:

"* * * There can be no doubt that cutting and dressing women's hair is as lawful an occupation as that of shaving and cutting men's beard and hair. Both Minn. Const. art. 1, § 7, and U. S. Const. Amends. V and XIV, guarantee the liberty of contract with regard to rendering services in any lawful calling save insofar as the state in the exercise of its police power may regu-

late that calling in promoting public health, safety, and welfare. Is there anything in the fact that a licensed beauty culturist cuts or bobs the patron's hair instead of trimming it slightly that affects either the patron's health or safety or public health, safety, or welfare? We think not. The sanitary regulations of both codes are essentially the same. If not, it is for the legislature to see that adequate measures are provided in both to preserve and promote public health." 205 Minn. 88, 285 N. W. 79.

In holding the distinction to be unconstitutional as violative of Minn. Const. art. 1, § 7, and the U. S. Const. Amends. V and XIV, this court quoted the following language from Banghart v. Walsh, 339 Ill. 138, 140, 171 N. E. 156, 157:

"The right to follow any of the common occupations of life is an inalienable right. (Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. ed. 832.) When the police power is exerted to regulate the conduct of a useful business or occupation the legislature is not the sole judge of what is a reasonable and just restraint upon the constitutional right of the citizen to pursue his calling and exercise his own judgment as to the manner of conducting it, but the measures adopted to protect the public health and secure the public safety and welfare must have some relation to these proposed ends * * *. Section 2 of the Beauty Culture act has withdrawn haircutting and trimming from the trade of beauty culture and given it to the trade of barber. * * * It is unreasonable to require persons desiring to become beauty culturists practicing upon women, as a necessary qualification for cutting and trimming the hair of women, to spend 1,248 hours in a school or college of barbering and two and a half years as an apprentice in a barber shop learning to shave men and trim their whiskers, —a thing entirely foreign to the trade for which they desire to qualify and having no relation to the health or safety of their patrons in their proposed occupation as beauty culturists or to the welfare of society. Section 18 of the Barbers act, as applied to the appellants and others in the same situation,

deprives them of their liberty and property without due process of law, and is therefore void under both the Federal and State constitutions." 205 Minn. 90, 285 N. W. 79.

The language employed by this court indicates that various regulations aimed at the certification requirements of both barbers and cosmetologists are constitutional to the extent that they relate to and promote established standards for the health, safety, and welfare of the public. It is undisputed that these statutory standards are qualitatively similar. Compare Minn. St. 154.05 (3), 154.16(9), 154.19(7, 8), with Minn. St. 155.09, subd. 1(1, 2), 155.13, and 155.16(3).

Therefore, just as this court could find in Johnson v. Ervin, *supra,* no rational basis upon which to uphold the limitation upon beauticians that they merely trim hair, we are here compelled to conclude that a valid exercise of the state's police power can neither effectuate nor buttress a policy limiting cosmetologists to the cutting of hair of women only.

The standard utilized in Mains v. Board of Barber Examiners, 249 Cal. App. 2d 459, 465, 57 Cal. Rptr. 573, 576 (1967), that regulations governing the business operations of barbers and cosmetologists may be "justified only when such regulation comes properly within the police power," is applicable here to thus remove the statutory impediment to licensed cosmetologists cutting the hair of both sexes.

The board contends that sexual distinctions are not at issue. However, the complaint alleges that defendant was unlawfully engaged in the practice of barbering. It is apparent to this court that the issue of this sexual distinction is squarely before us in that the precise factual basis of this action is simply that the defendant endeavored to cut the hair of males. It is also clear that this cutting of hair would have remained unchallenged had it been accomplished upon a female patron. Although it is clear that the board has attempted to focus our determination upon the nebulous distinction between cutting and trimming of hair, our

conclusion in Johnson v. Ervin, *supra,* makes that ruling unnecessary.

The case of Bolton v. Texas Board of Barber Examiners, 350 F. Supp. 494 (N. D. Tex. 1972), affirmed without opinion, 409 U. S. 807, 93 S. Ct. 52, 34 L. ed. 2d 68 (1972), was a per curiam decision of a three-judge district court, holding that a Texas statute which limited cosmetologists to work upon the hair of females and limited barbers to performing services for males was violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

With regard to the facts elicited by the lower court and the applicable case law, several conclusions are apparent. Despite the fact that as a practical matter barber students may receive substantially more training in the art of cutting hair, the record is void of any evidence tending to show that cosmetologists either receive inadequate instruction or are otherwise not qualified. Further, it has been neither stated nor implied that to allow cosmetologists to cut the hair of males will create a situation that is hazardous to the public health and welfare. In the absence of such a showing that public welfare demands police power invocation, this portion of Minn. St. 155.02, subd. 2, which limits the practice of beauty culture in the area of hair trimming to that of women is unconstitutional as a violation of the equal protection clause of the Fourteenth Amendment.

To hold otherwise would essentially give credence to the policies engendered by the statute in question. It would be untenable to hold on the one hand that cosmetologists are not qualified to cut the hair of men and on the other to allow them to practice their trade upon women. There can be no equivocation—cosmetologists are either qualified to perform this service—in which case they should not be restrained by an artificial distinction between the hair of males and females—or they are not qualified and should be prohibited from any cutting of hair. In light of our decision in Johnson v. Ervin, *supra,* there can be no doubt that the former conclusion is well justified. We hold that the pro-

vision of Minn. St. 155.02, subd. 2, limiting cosmetologists to the "hair trimming of women, as a part of women's hairdressing" is unconstitutional in violation of the equal protection clause of the Fourteenth Amendment.

Affirmed.