Sidney H. Asch, J.
Plaintiffs in this action are an individual and an alleged class of licensed hairdressers (cosmetologists) and beauty shop owners in New York State who assert that their constitutional rights are violated by a restriction in article 27 of the General Business Law which permits them to cut the hair of females only (General Business Law, § 401, *156 subd 5). A trial of plaintiffs’ claims was held on April 8 and 9, 1975.
The New York State Hairdresser and Cosmetologists Association is an organization comprised of licensed cosmetologists in New York State who number approximately 100,000. Intervenor-defendant, the New York State Association of Barbers, represents a group of licensed barbers numbering 24,000 in New York State. In addition, there are 2,400 barber apprentices.
In order to be licensed as a cosmetologist, a person must attend a duly licensed beauty school and take 1,000 hours of instruction to train him/her in the practice of cosmetology. Included in these 1,000 hours are 92 hours of haircutting. At the conclusion of their course work, prospective cosmetologists take an examination which includes a written and practical part.
In order to be licensed as a barber a candidate must take 1,000 hours of instruction at a duly licensed barber school, and thereafter fulfill an 18-month apprenticeship. In lieu of the going to barber school, the candidate may simply extend his apprenticeship for six months.
The barber courses include 400 hours on haircutting. At the end of the course work/apprenticeship period barber license candidates take a practical examination.
Individuals may also take a combination barber/beauty program in order to receive licenses in barbering and cosmetology. This requires the taking of 1,500 hours of courses covering the highlights of the separate barber and beautician program. In all other respects, the joint program has the same requirements as those needed for obtaining individual barbering and cosmetology licenses. It should be noted that a person who already has a barber or cosmetology license receives 1,000 hours advance credit in the combined program.
Plaintiffs’ claims herein concern the constitutionality of subdivision 5 of section 401 and paragraph (a) of subdivision 4 of section 431 of the General Business Law, only insofar as these sections restrict a cosmetologist from cutting the hair of males, but permit a barber to cut the hair of persons of both sexes.
The statute provides that a barber may perform his services on the hair of "humans” (General Business Law, § 431, subd 4, par [a]) while hairdressers are limited to perform their ser *157 vices on the head of a "female person”. (General Business Law, § 401, subd 5.)
Plaintiffs claim that this scheme of classification violates the United States Constitution in that: (1) it denies to the hairdressers equal protection under the law, as it discriminates against them in relation to the right to cut the hair of males; (2) it discriminates against male patrons and denies them due process of law by denying them the freedom of choice as to where, how and by whom they may have their hair cut; and (3) it denies due process of law to the hairdressers since it deprives them of the right to pursue the occupation of cutting men’s hair for financial gain.
Within this decade, decisions declaring unconstitutional similar statutory schemes dealing with the rights of cosmetologists and barbers to cut have become endemic. One of these was Bolton v Texas Bd. of Barber Examiners (350 F Supp 494), affirmed by the United States Supreme Court without opinion (409 US 807).
The plaintiff Bolton, and the Texas Hairdressers and Cosmetologists Association had brought suit in the Northern District, United States District Court of Texas against the Texas Board of Barber Examiners and others, to declare unconstitutional a statutory scheme closely resembling the statutory scheme here involved.
The District Court held those portions of the statute creating the classification to be null and void as being in violation of the Fourteenth Amendment of the United States Constitution.
Upon appeal to the United States Supreme Court, the judgment was affirmed in all respects (Bolton v Texas Bd. of Barber Examiners, supra).
In a number of jurisdictions, similar statutes have been reviewed by the courts. Except for one State, it has been uniformly held that such classification violates the Constitution (Alexander v Jefferson County, US Dist Ct, N Dist of Ala, Feb. 8, 1975; Tuozzoli v Killian, 386 F Supp 9; People v Taylor, Dist Ct of Col, March 30,. 1974; Pavone v Louisiana, 505 F2d 1022; Maryland State Bd. of Barber Examiners v Kuhn, 270 Md 496; Mains v Board of Barber Examiners, 249 Cal App 2d 459, 465; Johnson v Ervin, 205 Minn 84; Minnesota Bd. of Barber Examiners v Laurance, 218 NW2d 692 [Minn]; Off opn of Pa Atty Gen, Sept. 27, 1971; Off opn of Ariz Atty Gen, Jan. *158 19, 1972, Law Opn No. 72-3 [R 22]; Off opn of Wis Atty Gen, Oct. 15, 1971).
The only decision to the contrary is Green v Shama (217 NW2d 547 [Iowa]) an Iowa case, which, by a divided court, held such a scheme to be constitutional.
Although the decided cases in foreign jurisdictions may be persuasive, they are not authoritative in New York. It is well-established law that in a suit such as the present one, involving the constitutionality of a State statute, plaintiffs must transcend a heavy burden. They must show that there is no rational foundation whatsoever for the contested provision. (Matter of Simon v Myerson, 36 NY2d 300; Neale v Hayduk, 35 NY2d 182; I. L. F. Y Co. v Temporary State Housing Comm., 10 NY2d 263, 269.) In the context of the present action this means that plaintiffs must establish in essence that the statutory restriction on haircutting by cosmetologists lacks a rational connection to the public health, safety, or wellbeing and is not a valid exercise of the State’s police power. (See North Dakota Pharmacy Bd. v Snyder’s Stores, 414 US 156; Williamson v Lee Opt. Co., 348 US 483; People v Automobile Transporters Welfare Fund, 17 AD2d 448, affd 13 NY2d 814, cert den 376 US 908.) Furthermore, it is usually incumbent on a trial court to approach constitutional attacks on statutes with circumspection.
The defendant argues that the restriction at issue here does not involve sex discrimination, but rather serves the function of promoting the public health, safety and welfare. More specifically, defendants contend that although all human hair is chemically similar, there are vital differences in the way the hair of a man and a woman grows. In particular, men’s facial hair, side hair and back hair grow in a different fashion than the corresponding hair on a woman’s scalp; in addition, men have a tendency to go bald. Defendants further contend that men’s hair styles are separate and distinct from those of women and require special knowledge and experience, particularly in the skills of using a straight razor. These arguments are not persuasive to this court.
Defendants concede that chemically all human hair, male or female, is the same. The defendants, however, assert that there is a difference in human hair, apart from chemical. Accordingly, defendant states that the hair of a male grows in or around the area of the ears, while females’ hair does not; that males have receding hair while females generally do not; *159 that hair grows on the lips and chins of males, while generally that is not the case with females. The differences do not seem significant. If a hairdresser is trained and qualified to cut the hair of a female, he is qualified to cut the admittedly chemically similar hair of males.
The desire of many males to have the same right to receive a haircut from hairdressers because they prefer to have the benefit of the experience of hairdressers, particularly in cutting and shaping long hair, was referred to in Mains v Board of Barber Examiners (249 Cal App 2d 459, supra). There the court noted the prevalance of a vogue under which many males had acquired a "penchant for long tresses”; and that a great many members of the younger generation have elected to choose hairdressers to administer their haircuts in order to be adorned by the long-hair vogue adapted to the hair of both males and females. That vogue constitutes just one of the many types of haircut which hairdressers have been trained to administer in beauty schools and through experience.
The concept of what is beautiful is subjective and tailored to the individual’s taste. It goes without saying that neither the Legislature nor the courts can be the judge as to whether one kind of haircut gives a better appearance than another kind of haircut.
The difference in the number of hours prescribed in the school curriculum allocated to the cutting of hair by hairdressing students, as compared with barbering students, is not significant on the issue of constitutionality. The many cases outside of New York considered this argument and rejected it. (Alexander v Jefferson County, supra; Maryland v Kuhn, 270 Md 496, supra; Minnesota v Laurance, 218 NW2d 692, supra.)
From the testimony adduced in behalf of defendant, it became clear that the 400 hours prescribed for the cutting of hair by barbering students, applies to some barbering license applications, but not by any means to all of them. One who has been employed in barbering in a barber shop for at least two years may, upon taking and passing an examination, become a full-fledged licensed barber without attending any barbering school for a single moment, and without proving that he has any experience in the cutting of hair of either a male or a female.
That is so, although such a barber may never have cut the hair of a male or a female because he devoted his full time to other duties in the barber shop, such as shampooing, shaving, *160 etc., may have cut some hair, but there would be no record with the Department of State or anywhere else of the number of persons whose hair he may have cut; or may have cut the hair of some males, but never of any females, or vice versa.
The testimony also disclosed that the 400-hour requirement does not mean that a barbering school student is required to cut the hair of a single female, and that upon the examination for a license no applicant is required to cut the hair of a female. Yet the law permits barbers to cut the hair of females ás a means of earning a livelihood, without ever having cut the hair of a single female prior to becoming licensed, if they take advantage of the two-year regulation.
It seems worthy of note that the hairdressers’ curriculum which provides for a haircutting course of a duration of 92 hours also provides for a hairstyling course of 291 hours. The barbers’ curriculum does not include a single moment of study of hairstyling.
Hairstyling very frequently accompanies the cutting of the hair of females, as well as the cutting of hair of males, with long hair. Yet, the barber who has graduated from a barbering school, and a barber who becomes licensed simply by working in a barber shop for at least two years, have no training at all in hairstyling. So that in cutting the hair of males or females, the barber’s work is devoid of any styling, while the hairdresser has devoted 291 hours of schooling to that subject.
Defendant made much of the argument that a straight razor used by a barber in shaving, might injure a patron, when the razor is placed in the hands of a hairdresser.
While this testimony is indisputable, it has little bearing on the issue of this case, for the following reasons among others:
The witness who appeared for the State Department acknowledged in his testimony that hairdressers use a Week razor with a guard; they also use a mini-clipper, which is a small safety razor, and that the mini-clipper and the Week razor are used by hairdressers to shave those areas customarily shaved by a barber with a straight razor in conjunction with the giving of a haircut.
In any event, no matter who is capable of using a straight razor, the indisputable fact is that such razors are purchasable freely in many kinds of establishments throughout the United States, without the slightest restriction. The police power has *161 never been invoked for the purpose of interfering with the unrestricted use or sale of straight razors.
Assuming that a hairdresser might use a straight razor in cleaning up a haircut, it must be remembered that untold millions of men throughout the world use straight razors to shave themselves daily, or almost daily, without receiving any school or other formal training as to the use thereof. We have not as yet heard of any epidemic of one-eared men resulting from such use.
The New York rules and regulations governing sanitation in the barber shops and in beauty parlors are identical. The laws which seek to protect the health of those who patronize barber shops and beauty parlors are also identical.
In the one case which held a similar statutory scheme to be constitutional (Green v Shama, 217 NW2d 547, 550 [Iowa], supra), the majority asserted the existence of a health hazard to females in the cutting of men’s hair, in this way: "Health hazards are generally of greater incidence in cutting men’s hair because they often come to a barber from performing manual labor and thus there are higher probabilities of spreading contagious diseases; the same hazards are not generally present in regard to women.”
The unjustified factual reasons are patent. The inference inherent in the majority opinion that the legislation in question was intended to avoid exposing those in beauty parlors to health risks, while those in barber shops would safely weather the perils, represents an untenable point of view. In any event, it is not justified to the New York situation.
An applicant for a license to practice hairdressing and cosmetology is required to establish to the satisfaction of the Secretary of State by means of a medical certification that the applicant is free from infectious and communicable diseases (General Business Law, § 404). When such a license is renewed biannually, similar proof must be furnished to the Department of State (General Business Law, § 407, subd 4).
The identical rule as to the initial and subsequent proof of freedom from infectious and communicable diseases applies to barbers’ licenses as well (General Business Law, § 433, subd 3; § 434, subd 1, par [c]).
In view of all of these health safeguards, members of the public who patronize beauty parlors and barber shops have *162 the benefit of like, stringent rules and regulations designed to safeguard their health.
Consequently, the classification complained of in this action cannot rest upon any considerations of the health of patrons.
Morals cannot be deemed to be of concern here since the existing law permits barbers to cut the hair of both males and females in barber shops, in the presence of each other; males are permitted by law to have their nails manicured in beauty shops in the presence of members of both sexes; and males are permitted to patronize beauty parlors for the purpose of having head and scalp massages; for the exercise of the scalp and for the stimulation of the growth of the hair of the head (General Business Law § 401, subd 5).
In view of these factors, no argument can properly be advanced that the morals of anybody are adversely affected by reason of the fact that such services are afforded to males in beauty salons in the presence of female patrons. And so, the fact that a male would receive a haircut in a beauty salon in the presence of other males and females would have no adverse effect upon the morals of anybody.
The New York statutory scheme which authorizes licensed barbers to cut the hair of both males and females while restricting licensed hairdressers and cosmetologists to cut the hair of females only, is violative of the equal protection guarantees of the Federal and State Constitutions since the classification made is not based upon any reasonable distinction and is illusory.
The male who wishes to have his hair cut by a hairdresser and is compelled by law to have a barber cut his hair, suffers an infringement upon his personal rights as a result of the classification created by the statutory provisions of the law which are not based upon any reasonable distinctions.
The right which a female has of deciding for herself whether she wishes to have a hairdresser or a barber cut her hair, points up the fact that males and females do not have the equal protection of the law in the respects mentioned.
As noted by Angela Taylor, "The restrictions have led some beauty salons into becoming a sort of hair-cutting speakeasy, with men arriving surreptitiously after hours to be coiffured by Mr. Francois.” (NY Times, April 8, 1975, p 28.)
Since Delilah sheared Samson’s flowing tresses, with rather disasterous consequences to his potency, hair cutting has been *163 infused with sexual symbolism. It is fruitless to speculate about castration fears as being the matrix of the haircutting restrictions involved in this case. What is important is that this is a time of heightened sexual awareness and a re-evaluation of sexual identification. These are aspects of individual choice and expression protected by the Constitution.
The United States Constitution does not deny a State government the power to treat different professions or classes of people in different ways in the area of serving the public health, safety, welfare or morality.
However, Legislatures are most certainly denied the power to legislate people or professions into different classifications where the classifications are unrelated to the police power. (McDonald v Board of Elections, 394 US 802; Railway Express v New York, 336 US 106; Royster Guano Co. v Virginia, 253 US 412.)
It is possible to uncover examples of the traditional judicial attitude with respect to State classification based on sex. Thus, in State v Bearcub (1 Ore App 579, 581-582) the court said: "The Creator took care of classifying men and women differently, and if the legislature accepts these differences in a matter like this, we are not prepared to say that the classifications thus made were without good reason.”
However, the Constitution does not permit a State to place persons in different classes merely on the basis of sex. This would be directly contrary to the holding of the United States Supreme Court in Reed v Reed (404 US 71, 76), wherein the court stated: "To give a mandatory preference to members of either sex over members of the other * * * is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment.”
In Frontiero v Richardson (411 US 677) the United States Supreme Court held that sex, like race, was an immutable physical characteristic determined solely by birth and therefore it was a "suspect criteria” which required a "compelling State interest” to sustain such a classification. Concurring in that judgment, Justice Stewart held that the challenged statutes based upon sex worked an invidious discrimination in violation of the Constitution.
(See, also: Comment, Toward Sexual Equality?, An Analysis of Frontiero v Richardson, 59 Iowa L Rev 377; Kanowitz, Women and the Law: The Unfinished Revolution 7-99; Freeman, Legal Basis of the Sexual Caste System, 5 Valpanarso *164 U L Rev 203; Eastwood, Double Standard of Justice: Women’s Rights Under the Constitution, 5 Valpanarso U L Rev 281.)
Discrimination based on sex will be tolerated under the equal protection clause only if it bears a rational relationship to a permissible purpose of the classification. And so, in Seidenberg v McSorley’s Old Ale House (308 F Supp 1253, 1259), the court held that there is no difference between men and women as potential customers of defendant and so no rational basis existed for serving one and not the other.
The reasoning of the Seidenberg case is applicable here, since no rational basis exists for granting to barbers the right to cut the hair of males and females while restricting hairdressers to the right to cut the hair of females only.
It is urged by defendants that the present lawsuit appears to be little more than an attempt to reap an economic advantage through the subterfuge of constitutional argument. But this argument can also be invoked by the plaintiffs.
In Truax v Raich (239 US 33, 41) the court said: "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure” (citations omitted; see, also, New State Ice Co. v Liebmann, 285 US 262).
The decisions of the State of New York are to the same effect. (People v Bunis, 9 NY2d 1; Loblaw, Inc. v New York State Bd. of Pharmacy, 11 NY2d 102; People v Gillson, 109 NY 389; Burke v Kingsley Books, 208 Misc 150, affd sub nom Brown v Kingsley Books, 1 NY2d 177; Defiance Milk Prods. Co. v DuMond, 205 Misc 813, affd 285 App Div 337, affd 309 NY 537; Olan Mills v City of Niagara Falls, 206 Misc 1105; Benco Transp. v Incorporated Vil. of Brookville, 228 NYS2d 38.)
Licensing without a functional basis, often serves to perpetuate a monopoly. (Gellhorn, Individual Freedom and Governmental Restraints [Baton Rouge, LSU Press, 1956]; passim see, also, Laski, American Democracy [Viking, 1948], p 568; Packard, Status Seekers [Pocket Books, Inc., 1959], p 97.) The economic stakes of this litigation for both barbers and beauticians are substantial. But the resolution of constitutional issues cannot depend upon a calculation on the abacus of economic advantage.
*165 Defendant contended at the conclusion of the trial that the plaintiff association was guilty of laches in bringing this suit.
In the year 1946 when the Legislature enacted the statutes which created the unconstitutional classification (General Business Law, § 400, subd 5; § 431, subd 4-a), the Legislature did not foresee nor could anyone have foreseen that beginning with the 1960’s and continuously to the present time such a large portion of the male population throughout this State would be wearing long hair, cut and styled in a manner similar to that of females; with the style made popular by the long-running theatrical production of "hair”, the popularity of long hair for males was greatly extended; and the classification under which barbers may cut the hair of humans, while hairdressers are permitted to cut the hair of females only would be declared unconstitutional by the United States Supreme Court, and by the courts of many other State and the Federal District Courts, which had passed upon similar questions of law as here involved. These facts vitiate the claim of laches. The courts are reluctant to presume acquiescence in the loss of fundamental constitutional rights. (Johnson v Zerbst, 304 US 458; Aetna Ins. Co. v Kennedy, 301 US 389, 393; Ohio Bell Tel. Co. v Commission, 301 US 292, 307.)
In a recent review of an old eighteenth century feminist novel, Naomi Bliven describes the Judge who is "convinced that civilization hangs by a thread, and that any change-bobbed hair on women or long hair on men — will snap that thread.” (Mary Wollstonecráft’s "Maria, or the Wrongs of Woman”, reviewed in The New Yorker, May 26, 1975, p 118.) Indeed, our civilization may be in a precarious state. Its survival, however, is not more likely to be assured by an insistence on traditional hair cutting, than by adherence to traditional attitudes which are no longer relevant to the human condition.
On the basis of the foregoing analysis, this court finds the restriction of subdivision 5 of section 401 of the General Business Law against the cutting of hair of males by hairdressers and cosmetologists, to be unconstitutional.
Settle judgment.