PEOPLE v McDONALD

1. LICENSES—STATUTES—CONSTITUTIONAL LAW—COSMETOLOGISTS—
   BARBERS.

   A statutory restriction which prohibits licensed cosmetologists
   from cutting the hair of any male person, while licensed
   barbers may cut the hair of both men and women, insofar as it
   prevents cosmetologists from rendering to male patrons the
   same haircutting services they may lawfully provide to female
   patrons, is unreasonable and unconstitutional as violative of
   due process and equal protection (US Const, Am XIV; Const
   1963, art 1, §§ 2, 17).

2. CONSTITUTIONAL LAW—EQUAL PROTECTION—STATUTORY CLASSIFICA-
   TION.

   A statutory classification or differentiation between similarly
   situated groups or persons must bear a reasonable relationship
   to a legitimate state purpose or be based upon a ground of
   difference having a fair and substantial relation to a legitimate
   object of the legislation in order to satisfy equal protection
   requirements.

3. CONSTITUTIONAL LAW—DUE PROCESS—REGULATION OF BUSINESS—
   REGULATION OF OCCUPATION.

   A statute which regulates the right to do business or practice an
   occupation must bear a real and substantial relationship or at
   least a reasonable relation to the public health, safety, morals
   or general welfare in order to satisfy due process requirements.

4. LICENSES—CONSTITUTIONAL LAW—BARBERS—COSMETOLOGISTS—
   STATUTES.

   The purpose of regulating both barbers and cosmetologists is to
   secure qualified practitioners and insure sanitary facilities, and
   there is no apparent rational or reasonable relation between
   these objectives and a statutory restriction which limits the
   haircutting activity of cosmetologists to female persons (MCLA
   338.752; MSA 18.132).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 10 Am Jur 2d, Barbers and Cosmetologists § 2 *et seq.*
[2, 3] 16 Am Jur 2d, Constitutional Law § 551.

Appeal from Kent, John H. Vander Wal, J. Submitted November 6, 1975, at Grand Rapids. (Docket No. 23769.) Decided January 27, 1976.

John McDonald was convicted in district court of cutting the hair of a male person without being a licensed barber. Defendant appealed to the circuit court, which affirmed. Defendant appeals by leave granted. Reversed.

*Frank J. Kelley,* Attorney General, and *Robert A. Derengoski,* Solicitor General (by *Keith D. Roberts,* Assistant Attorney General, as amicus curiae), and *Harold S. Sawyer,* Prosecuting Attorney, and *Donald A. Johnston III,* Chief Assistant Prosecuting Attorney, for the people.

*Luyendyk, Hainer, Hathaway & DeJong,* for defendant.

Amicus Curiae: Michigan Cosmetology Association, Inc. (by *Keller & Avadenka, P. C.).*

Before: T. M. BURNS, P. J., and V. J. BRENNAN and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. Following a bench trial, defendant, a licensed cosmetologist, was convicted of cutting the hair of a male person, contrary to § 55 of the Barber Licensing and Regulation Act of 1968, as amended, MCLA 338.1655; MSA 18.117(55). Defendant was fined $1000 and placed on probation for six months. On appeal to circuit court, his conviction was affirmed. Application for leave to appeal was granted by this Court as were the motions of the Michigan Cosmetology Association, Inc, and the Michigan State Barbers' Association, Inc, to file an amicus curiae brief.

Section 3 of the Barber Licensing and Regula-

tion Act permits a licensed barber to cut the hair of "any person". MCLA 338.1603; MSA 18.117(3). However, § 2 of the cosmetology act permits a licensed cosmetologist to cut the hair of "any female". It expressly does not authorize a cosmetologist to cut or clip the hair of any male person, unless he or she has first obtained a barber's license. MCLA 338.752(b); MSA 18.132(b).

Defendant contends in this appeal that MCLA 338.752; MSA 18.132, insofar as it restricts cosmetologists to cutting the hair of female persons and precludes cosmetologists from cutting the hair of male persons, violates the United States Constitution. Defendant does not specify any provision of the Constitution. Amicus curiae Michigan Cosmetology Association argues that the statutes violate the due process and equal protection clauses of the Federal and state Constitutions.

Since the time of his arrest, defendant has timely and properly challenged the constitutionality of the licensing scheme referred to above which permits licensed barbers to cut the hair of any person, but which restricts licensed cosmetologists to the cutting of the hair of females only.

In Michigan, barbers have been licensed since 1899, but cosmetologists have been regulated only since 1931. In 1943 the State Barbers Board threatened licensed cosmetologists with prosecution for violation of the barbers act for their activity in cutting women's hair without being registered as barbers. The controversy went to the Michigan Supreme Court in *Jeffs v Board of Examiners of Barbers,* 320 Mich 78; 30 NW2d 445 (1948). In *Jeffs* the defendant barbers board contended that hair dressing and hair styling as practiced by cosmetologists was in fact hair cutting within the meaning of the barbers act and

required a barber's license. The plaintiffs claimed
that if the statute were so construed, it would
violate the due process clauses of the Federal and
state Constitutions. The Court did not reach plain-
tiffs' constitutional claim. As the Court construed
the act, it found that the act did not violate the
Federal or state Constitution. The Court held that
hair cutting customary and incidental to the prac-
tice of cosmetology could be undertaken without
licensing under the barbers act:

"We conclude that it was not the intention of the
legislature that a licensed cosmetologist should be con-
sidered guilty of a violation of the provisions of the
barbers act merely because without a barber's license
she clips or trims hair as an incident to her work, if the
clipping or trimming of hair is of the type that cosme-
tologists customarily and ordinarily do and is per-
formed on the same customer and on the same occasion
as other work such as is customarily done by a cosme-
tologist." 320 Mich 78, 84.

At the time the litigation began, the cosmetol-
ogy act provided that it did not authorize "any
registered cosmetologist to cut or clip the hair of
any person unless he or she" had first obtained a
barber's license. In construing the words "cut or
clip the hair of any person" the Court noted that
practicing the occupation of a barber meant to
"perform any work customarily done by barbers as
such". 1927 PA 382, § 18 (repealed 1969), and
further noted:

" * * * that the cosmetologist who merely cuts or
trims the hair of her lady customer as an incident to
her work is not performing the work customarily done
by a barber." 320 Mich 78, 82.

The Court accepted a distinction between, on the

one hand, hair cutting and clipping such as is incidental to hair dressing and hair styling within the meaning of the cosmetology act and, on the other, hair cutting within the meaning of the barbers act. The latter occurred when hair cutting, "as practiced on the individual or on customers in general". became "the important or main feature of the process, and not the incident thereto". 320 Mich 78,83.

"We consider that the legislature intended that a licensed cosmetologist should be permitted to do all that cosmetologists customarily do in their regular and ordinary work but did not intend that a licensed cosmetologist should assume to do the work customarily and ordinarily done by a licensed barber." 320 Mich 78, 83.

Thus, hair cutting incident to customary cosmetological work, *i.e.,* hair dressing and hair styling, did not require a barber's license.

As is evident from the opinion, the Court assumed that it was talking about cosmetologists cutting the hair of female persons only and that cosmetology involved the dressing, styling and cutting of women's hair, not men's hair.[1] The Legislature apparently assumed that allowing cosmetologists to cut the hair of any female would resolve the issue. It amended the cosmetology act to provide, as it presently does, that a licensed

[1] To the Court, cosmetologist meant "women's hair stylist". *E.g.,*

"Barbering and dressing of women's hair are both ancient occupations. It is made to appear in this case that the clipping and thinning of women's hair has always constituted a part of hair dressing from the earliest times. Long before the word "cosmetology" was employed, hair dressers, now sometimes called stylists, thinned and snipped women's hair without regulation by the State." 320 Mich 78,80.

"The first regulatory act applying to women's hair stylists was enacted as the cosmetology act by Act No. 176, Pub. Acts 1931." 320 Mich 78,81.

Also, " * * * the cosmetologist who merely cuts or trims the hair of her lady customer * * * ." 320 Mich 78, 82.

cosmetologist may cut the hair of any *female* person, but that unless he or she has first obtained a barber's license, a registered cosmetologist is not authorized to cut or clip the hair of any *male* person. 1947 PA 38; MCLA 338.752(b); MSA 18.132(b).

Thus has arisen the situation complained about in this case, namely, that licensed barbers can cut the hair of men and women, but that licensed cosmetologists can cut the hair of women customers only. We find the restriction to be not only anachronistic but unreasonable and unconstitutional as well. We hold that it violates the due process and equal protection clauses of the state and Federal Constitutions. US Const, Am XIV; Const 1963, art 1, §§ 2 and 17.

This same conclusion has been reached in several Federal court decisions where similar statutes have been reviewed. At issue in *Bolton v Texas Board of Barber Examiners,* 409 US 807; 93 S Ct 52; 34 L Ed 2d 68 (1972), *aff'g mem* 350 F Supp 494 (ND Texas, 1972), was the constitutionality of sections of a Texas statute which restricted the occupational activity of persons licensed as cosmetologists to work on females only and the occupational activity of persons licensed as barbers to work on males only. The United States Supreme Court in a memorandum opinion held that the sections in question violated the Equal Protection clause of the 14th Amendment. In *Pavone v Louisiana State Board of Barbers Examiners,* 505 F2d 1022, 1023 (CA 5, 1974), the Court held, relying on *Bolton,* that a Louisiana statute which restricted cosmetologists to cutting the hair of females and forbade them from cutting the hair of males was "so patently unconstitutional as not to present a substantial constitutional question". *Tuozzoli v*

*Killian,* 386 F Supp 9 (D Conn, 1974), involved a constitutional challenge to a Connecticut statutory scheme that restricted hairdressers and cosmetologists to female clientele while permitting barbers to serve both sexes. Holding that the restriction of the services of hairdressers to female clientele was not rationally related to a legitimate state objective and thus violated the 14th Amendment, the court declared the restriction unconstitutional. The court regarded *Bolton* as authoritative, stating:

"The Connecticut legislation is not less constitutionally repugnant because it permits barbers to serve males as well as females; the difference, if anything, only enhances and dramatizes the arbitrariness of the restriction imposed on hairdressers." 386 F Supp 9,11.

Similar statutory restrictions have been found unconstitutional under state and Federal constitutions in a number of other state court decisions as well. *Leetham v McGinn,* 524 P2d 323 (Utah, 1974) (statutory scheme which permitted barbers to cut the hair of both men and women but restricted cosmetologists to cutting the hair of girls and women), *Minnesota Board of Barber Examiners v Laurance,* 300 Minn 203; 218 NW2d 692 (1974) (statutory provision limiting cosmetologists to the "hair trimming of women, as a part of women's hairdressing"), *Maryland State Board of Barber Examiners v Kuhn,* 270 Md 496; 312 A2d 216 (1973) (statutory scheme which permitted barbers to cut the hair of both men and women but restricted cosmetologists to cutting the hair of women). Also, *Mains v Board of Barber Examiners,* 249 Cal App 2d 459; 57 Cal Rptr 573 (1967), *New York State Hairdressers & Cosmetologists Association, Inc v Cuomo,* 82 Misc 2d 154; 369 NYS2d 965 (Sup Ct,

1975). *Cf. Panico v Robinson,* 23 Ill App 3d 848; 320 NE2d 101 (1974) (administrative rule allowing cosmetologists to cut and trim hair of female patrons only). We have found only one decision which reaches a contrary conclusion, *Green v Shama,* 217 NW2d 547 (Iowa, 1974).

We do not consider this a sex discrimination case. As several of the above cases note, the classification here is not directly based on sex. The statute does not discriminate between barbers and cosmetologists on the basis of their sex. The question might be otherwise if male patrons were claiming that because of their sex they were being denied the haircutting services of cosmetologists. Whether a cosmetologist has standing to assert the equal protection claim of a patron is a question we do not reach.

However, under both equal protection and due process analyses, the statutory restriction challenged here fails to pass constitutional muster. Under an equal protection analysis the statutory classification or differentiation between similarly situated groups or persons must bear a rational relationship to a legitimate state purpose or be based upon a ground of difference having a fair and substantial relation to a legitimate object of the legislation. *Weber v Aetna Casualty & Surety Co,* 406 US 164; 92 S Ct 1400; 31 L Ed 2d 768 (1972), *Reed v Reed,* 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971). Under a due process analysis the statute, as an exercise of the police power regulating the constitutional right to do business or practice an occupation, must bear a real and substantial relationship (or at least a reasonable relation) to the public health, safety, morals or general welfare. *Grocers Dairy Co v Department of Agriculture Director,* 377 Mich 71; 138 NW2d 767

(1966). Thus the critical question is whether the restricting of the haircutting activity of cosmetologists is rationally related to a legitimate state objective or reasonably related to the public health, safety, morals or general welfare.

The purpose of regulating both barbers and cosmetologists is to secure qualified practitioners and insure sanitary facilities. We are unable to perceive any rational or reasonable relation between these objectives and the restriction of the haircutting activity of cosmetologists to female persons. It certainly is not sanitation requirements. Both the cosmetology act and the barbers act prescribe sanitary measures and requirements. MCLA 338.762; MSA 18.142. MCLA 338.1643; MSA 18.117(43). Thus it is unnecessary to require cosmetologists to conform to the sanitary regulations of the barbers act. See *Jeffs v Board of Examiners of Barbers, supra.* Cosmetologists need only comply with the sanitary requirements of the cosmetology act, and not the barbers act, in order to cut women's hair. They seek only to render the same services for men's hair that they already provide for women's hair. There is no showing that different sanitary measures are required to do so.

All hair is created equal—organically and chemically—according to the unanimous trial testimony. Thus, no difference exists between the hair of males and females which would render one qualified to cut women's hair · unqualified to cut men's hair. Although barbers are required to receive more practical training hours in hair cutting than cosmetologists are *(compare* Administrative Code 1973 AACS, R 338.2048 *with* Administrative Code 1970–1971 AACS, R 338.2151), and although certain hair styles—*e.g.,* the erstwhile "conventional male haircuts"—may require special tech-

niques in which only barbers are required to be trained, cosmetologists are qualified to cut hair. They need not meet the training requirements of the barbers act in order to cut women's hair. They seek only to render the same services for men's hair that they already provide for women's hair. There is no showing that different training is required or that cosmetologists are unqualified to do so.

Insofar as MCLA 338.752; MSA 18.132 prevents cosmetologists from rendering to male patrons the same haircutting services they may lawfully provide to female customers, it violates the equal protection and due process clauses of the state and Federal Constitutions.

Reversed. No costs.