James GRASSMAN, d.b.a. First Barber Stylists Company, et al., Respondents,

v.

MINNESOTA BOARD OF BARBER EXAMINERS, et al., Defendants,

Albert Quie, as Governor of the State of Minnesota, Appellant,

Allied Barbers Legislative Committee, Inc., Intervenor.

Nos. 51161, 51287.

Supreme Court of Minnesota.

May 1, 1981.

Warren Spannaus, Atty. Gen., Robert Clayton, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Barna, Guzy, Terpstra, Merrill & Giancola and James Reuter and David Cossi, Fridley, for respondents Grassman et al.

TODD, Justice.

James Grassman is a licensed barber in Minnesota. He owns or operates six barber shops located in different trade areas established by the Board of Barber Examiners (Board). Grassman challenges the regulations imposed on barbers on the grounds that cosmetologists, who are permitted to perform barbering functions, are not similarly regulated. Robert Graham is employed by Grassman and desires to cut hair after the closing times established by the Board. Carol Lanning is an apprentice barber who desires to work for Grassman, but was precluded by a statutory provision. Patricia Schultz is a customer who desires to have her hair cut by a barber after the established closing hour. The trial court invalidated the closing hour regulations and statutory apprentice rules on equal protection grounds. The trial court sustained the trade area regulations and refused to award attorneys fees to plaintiff. Governor Albert Quie appealed and Grassman filed a notice of review. The defendants Board of Barbers and Board of Cosmetologists did not appeal. We affirm the trial court as to the closing hour regulations, the statutory apprentice rule, and the denial of attorneys fees, but reverse the trial court's order sustaining the validity of the trade areas.

Grassman, a licensed barber, owns six hairstyling establishments located in different trade areas in the metropolitan area. The record reveals that each shop is staffed by both licensed barbers and cosmetologists and that the functions performed by the hairstylists are similar and without regard to the sex of the clientele. According to the testimony adduced at trial, current regulations of barbers, including a prohibition against working during the evening hours, interfere with Grassman's effective financial management of his business; prevent several employees from working to the full extent of their needs or desires; prohibit Grassman from employing more than two apprentices per shop; and prevent customers from obtaining the services of a barber during the evening hours. Therefore, appellants commenced this action to obtain a judicial declaration that Minn.Stat. § 186.01 (1980), the Code of Fair Competition for the Barber Trade (the Code) enabling legislation; the Code; and Minn.Stat. § 154.03 (1980), the legislation regarding barbers' apprentices, are unconstitutional.

On appeal, two primary areas of regulation require examination. The first relates to the interrelationship of the fields of barbering and cosmetology, and the second centers upon the creation of statutory "trade areas" to facilitate the internal management of the barbering profession alone.

1. The provisions of the Code at issue are Articles VI, VII, VIII, IX, and Sections 1, 2, 3, 4, 5, 9, and 12 of Article X. These provisions essentially delineate the appropriate rates of compensation, the maximum working hours of employees, and the operational hours of barber establishments. The contested portion of Minn.Stat. § 154.03 (1980) prohibits a barbershop from employing more than two apprentices.

Respondents' challenges to these regulations focus upon their view that the Code provisions and the statutory apprentice rule impermissibly regulate the barbering profession in a manner inconsistent with the operations of other personal service industries. In this regard, the trial court held that the enforcement of the challenged Code provisions and the statutory apprentice rule resulted in an unconstitutional denial of equal protection when examined in the context of the relationship of the barbering profession with the closely allied but not similarly regulated cosmetology field.

Our first inquiry is therefore whether the challenged regulations which impose upon barbers more stringent standards than those required of cosmetologists are constitutionally defective.

■ The statutory and Code provisions which regulate but one of two closely associated professions must be examined in ac-

cordance with the three criteria enunciated in *Schwartz v. Talmo*, 295 Minn. 356, 205 N.W.2d 318, *appeal dismissed*, 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973), to determine whether a statute will survive an equal protection attack. Those factors are that:

> (1) the classification [in the statute] uniformly, without discrimination, applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation;
>
> (2) the distinctions which separate those who are included within the classifications from those who are excluded are not manifestly arbitrary or fanciful, but are genuine and substantial so as to provide a natural and reasonable basis in the necessity or circumstances of the members of the classification to justify different legislation adapted to their peculiar conditions and needs; and
>
> (3) the classification is germane or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide.

*Id.* at 362, 205 N.W.2d at 322 (footnote omitted).

■ In application of these criteria, we first conclude there is no question but that the professions are similarly situated. Historically, we initially recognized that the progenitors of Minn.Stat. §§ 154.02 and 155.02, dealing respectively with the fields of barbering and cosmetology, authorize those licensed in each profession to perform similar functions. *See Johnson v. Ervin*, 205 Minn. 84, 89, 285 N.W. 77, 79 (1939). We reaffirmed the similarity of the two professions more recently in *Minnesota Board of Barber Examiners v. Laurance*, 300 Minn. 203, 209, 218 N.W.2d 692, 695–696 (1974), when we examined the training and skills of the two professions and found no rational basis upon which to uphold a policy limiting cosmetologists to the cutting of women's hair alone.

In view of the fact that barbers and cosmetologists are similarly situated, the regulations deemed necessary to the orderly functioning of the barbers should be equally applicable to the cosmetologists unless a rational basis for a distinction exists.

Appellant urges us to find that the second criterion, a rational basis of distinction, is satisfied because substantial economic differences historically have attended the barbering profession. Appellant argues that the imposition of more stringent operational restrictions upon the smaller, more sophisticated profession is justified. These alleged distinctions are not genuine and substantial and they fail to account for the similarity of training, experience, and commitment practiced by the hairstylists, however formally classified or licensed.

Finally, the legislature enacted Minn. Stat. § 186.01 (1980), to deter unfair trade practices and unfair competition and to promote public health considerations in all personal trades. It is without merit to argue that this statute, which by its terms is equally applicable to both professions, requires the imposition of regulations upon barbers alone to effectuate the statutory purpose.

■ Based upon the foregoing analysis, we conclude that the trial court did not err when it held that the subject statute and regulations are violative of the equal protection guarantee of the federal and state constitutions. *See Minnesota Board of Barber Examiners v. Laurance*, 300 Minn. 203, 210–11, 218 N.W.2d 692, 696 (1974).

2. A second critical feature of the district court's decision relates to the statutorily authorized creation of "trade areas", geographically defined areas in which regulations unique to each area are implemented in furtherance of the legislative objectives of Minn.Stat. § 186.01 (1980). In sustaining the validity of the trade area concept, the trial court reasoned that inasmuch as varying economic conditions throughout the state could justify the imposition of different standards upon barbers practicing in different localities, the regulatory device is not manifestly arbitrary.

■ While the trial court's analysis is not without logical support, it ignores the fact

that cosmetologists operate within the same geographically defined areas without significant or similar regulation. In effect, the establishment of trade areas is merely a mechanism to accomplish an invalid regulation of but one of two closely allied professions and, therefore, the trade area concept is invalid upon the basis that it constitutes a denial of equal protection under both the federal and state constitutions.

3. While the parties address additional constitutional questions, they need not be reached and instead the sole issue remaining is whether the trial court properly denied respondents' request for attorneys fees.

■ As a general rule, a successful litigant's right to attorneys fees must be predicated upon either a contractual or statutory authorization. *See State, by Spannaus, v. Carter*, 300 Minn. 495, 497, 221 N.W.2d 106, 107 (1974). An exception exists where the successful litigant has conferred a substantial benefit that can be proportionately spread among an ascertainable class. *See Fownes v. Hubbard Broadcasting, Inc.*, 310 Minn. 540, 543, n. 3, 246 N.W.2d 700, 702, n. 3 (1976).

■ We are not persuaded by respondents' contention that their successful suit vindicated the rights of all barbers to conduct their business free from unwarranted governmental interference. In light of the facts and circumstances of this case as demonstrated by the record before us, we decline to hold that the respondents' conferred a substantial benefit upon an ascertainable class as the relative benefits and burden so this decision are unknown. *See Bosch v. Meeker Cooperative Light & Power Ass'n*, 257 Minn. 362, 366–367, 101 N.W.2d 423, 426–427 (1960) ("Substantial benefit" must be evaluated in light of the facts and circumstances of the particular case). We therefore affirm the trial court's decision to deny an award of attorneys fees to respondents.

Affirmed in part; reversed in part.

SCOTT, J., took no part in the consideration or decision of this case.